KATHERINE LEARY SURRATT, Plaintiff v. JERRY L. NEWTON, JR., D/B/A JERRY'S REALTY SERVICE; AND PAUL JEFFREY NEWTON, D/B/A NEWTON BROTHERS, Defendants

No. 8921SC986

(Filed 17 July 1990)

1. **Appeal and Error § 205 (NCI4th) — appeal filed 10 days after appeal filed by codefendant — appeal not timely**

In a rent abatement action the trial court properly dismissed one defendant's appeal for his failure timely to file notice of appeal in compliance with N.C.G.S. § 1-279(c) and Rule 3 of the N. C. Rules of Appellate Procedure, and there was no merit to that defendant's contention that he had ten days to file his notice of appeal after the other defendant had filed his notice of appeal, since Rule 3 merely contemplates

SURRATT v. NEWTON

[99 N.C. App. 396 (1990)]

an additional, extended time period for response only from other parties to that same appeal, but in this case the late defendant was not an original party to the action but was brought into the suit by counterclaim of plaintiff; defendants were charged with separate violations of the Residential Rental Agreements Act and the city housing code for separate time periods which each managed the property in which plaintiff lived; each defendant was represented by his own counsel; the trial court carefully separated each issue as it related to each defendant; and the jury rendered separate and distinct verdicts against each defendant.

**Am Jur 2d, Appeal and Error §§ 292, 296.**

2. **Appeal and Error § 205 (NCI4th) — appeal not timely**

Plaintiff's appeal of the trial court's failure to treble all damages and her appeal of the trial court's refusal to award attorney's fees was not timely, though filed within ten days of defendant's appeal, since defendant's appeal was untimely, and plaintiff therefore was not entitled to an additional ten days beyond that in which to file her appeal.

**Am Jur 2d, Appeal and Error §§ 292, 296.**

3. **Landlord and Tenant §§ 8, 19 (NCI3d) — rent abatement action — defendant landlord as proper party**

Defendant rental agent was a proper party in a rent abatement action where plaintiff presented evidence that defendant had actual authority to repair and keep the premises in a fit and habitable condition and had failed to do so during her tenancy, and, as landlord, defendant's violation of N.C.G.S. § 42-42(a) subjected him to liability for rent abatement.

**Am Jur 2d, Landlord and Tenant §§ 61, 616, 647.**

4. **Landlord and Tenant §§ 8, 19 (NCI3d) — rent abatement action — written notice of needed repairs not required of tenant**

There was no merit to defendant's contention in a rent abatement action that plaintiff could not recover for those defects enumerated in N.C.G.S. § 42-42(a)(4) unless written notice was given to the landlord, since the statute does not require written notice of the repairs if they are necessary to put the premises in a fit and habitable condition or if the conditions constitute an emergency, and the jury found that

SURRATT v. NEWTON

[99 N.C. App. 396 (1990)]

the conditions here requiring repairs rendered the premises in an unfit and uninhabitable condition.

Am Jur 2d, Landlord and Tenant §§ 61, 616, 647.

5. **Landlord and Tenant § 19 (NCI3d) — rent abatement — agent's fee not limitation on amount of tenant's recovery**

The amount of defendant rental agent's fee is not a limitation on the amount of the recovery by plaintiff tenant from the agent, but the amount of rent paid is a limit on recovery from all parties in an action for rent abatement.

Am Jur 2d, Landlord and Tenant §§ 842, 844, 845.

6. **Landlord and Tenant § 19 (NCI3d) — rent abatement — no recovery for periods when rent not paid**

In an action for rent abatement plaintiff was precluded from recovering rent for the periods in which she paid none.

Am Jur 2d, Landlord and Tenant §§ 842, 844, 845.

7. **Landlord and Tenant § 19 (NCI3d) — rent abatement action — landlord as agent, not owner — amount of rent recoverable**

Plaintiff has a claim for rent abatement against a landlord for the amount of rent paid, and no lesser measure of damages is recoverable against a landlord, as defined by N.C.G.S. § 42-40(3), merely because he is not the owner but is an agent.

Am Jur 2d, Landlord and Tenant §§ 842, 844, 845.

8. **Landlord and Tenant § 19 (NCI3d) — rent abatement — plaintiff's "guess" at damages — plain error rule inapplicable**

The trial court in an action for rent abatement did not commit "plain error" in allowing plaintiff to guess the amount of money spent on repairs, since the plain error doctrine applied only in criminal cases, and any error by the court was of no consequence, as plaintiff guessed with respect to damages only as to the cost of fuses.

Am Jur 2d, Landlord and Tenant §§ 842, 844, 845.

9. **Landlord and Tenant § 19 (NCI3d) — rent abatement — sufficiency of evidence of fair rental value**

Evidence was sufficient to support an award for damages in an action for rent abatement where defendant testified that the fair rental value during the period he handled the property

SURRATT v. NEWTON

[99 N.C. App. 396 (1990)]

was $600 a month because it was a fine house and it only rented for less because of the nature of the neighborhood and plaintiff testified that the rental value of the property in its then existing condition was between $100 and $150.

**Am Jur 2d, Landlord and Tenant §§ 842, 844, 845.**

10. **Landlord and Tenant § 19 (NCI3d)— rent abatement action— previous settlement with owner—defendant landlord entitled to credit**

In a rent abatement action against defendant landlord the trial court should have granted a credit against the damage award for sums received in settlement with the landowners, since there can be but one recovery for the same injury or damage.

**Am Jur 2d, Landlord and Tenant §§ 842, 844, 845.**

11. **Trial § 13 (NCI3d)— rent abatement—jury viewing evidence during deliberation—no error**

The trial court did not err in allowing the jury to view evidence during deliberation where the jurors viewed the exhibits in open court with no communication among them.

**Am Jur 2d, Trial §§ 72, 79-81.**

Judge GREENE concurring in the result.

APPEAL by defendants from judgment entered 17 April 1989 by *Judge James A. Beaty, Jr.* in FORSYTH County Superior Court. Plaintiff cross appeals as to defendant Paul Jeffrey Newton, d/b/a Newton Brothers. Heard in the Court of Appeals 15 March 1990.

This is an action seeking rent abatement and other damages associated with the rental of allegedly unfit and uninhabitable residential property. For about twelve years from 1974 or 1975 through February 1987, plaintiff, who was the defendant in the summary ejectment action, rented a house located on 1712 E. Third Street in Winston-Salem, N.C. Cleveland and Mildred Griffin, the owners of the property, are not parties to this lawsuit as a result of settlement. Plaintiff initially paid $250.00 per month in rent but during the last three years of her occupancy of the leased premises, the rent was increased to $270.00 per month.

SURRATT v. NEWTON

[99 N.C. App. 396 (1990)]

Defendant Paul Jeffrey Newton, d/b/a Newton Brothers, was the agent/manager of the property from the time plaintiff moved in until approximately 31 December 1985. From approximately 1 January 1986 until plaintiff vacated the premises in February 1987, defendant Jerry Newton, d/b/a Jerry's Realty Service, was rental agent/manager of the property. The agents received ten percent of the rent as compensation for managing the property. Plaintiff allegedly had many problems with defects in the house and repairs which needed to be done from the time she began her tenancy until the time she moved out. Many of plaintiff's problems involved electrical failures, flooding of sewage and water into the house, rodent infestation, and other deteriorating conditions throughout the house. Plaintiff testified that many of her reports to defendants as to needed repairs were unanswered and ignored. At trial, plaintiff introduced evidence to show that defendants had actual or apparent authority to make those repairs necessary to put and keep the home in a fit and habitable condition throughout her tenancy. Plaintiff discontinued rent payments in November 1986 but did not move out of the house until late February or early March 1987.

On 9 January 1987 defendant Jerry Newton brought a summary ejectment action against plaintiff in magistrate's court and judgment was entered 19 January 1987. Plaintiff vacated the premises in late February or early March and appealed to the district court for trial *de novo*. On or about 28 March 1987, plaintiff filed an answer alleging that she owed Jerry Newton nothing and that she had no obligation to pay the rent since both the realtors and the owners had failed to "put and maintain the premises in a safe, fit, sanitary, and habitable condition as required by the law of North Carolina." Plaintiff also alleged that the property violated the Winston-Salem Housing Code. Plaintiff then moved to dismiss the summary ejectment action, and counterclaimed for rent abatement and other consequential damages, actual and punitive damages, refund of security deposit and reasonable attorney's fees. Plaintiff later amended her answer and counterclaim to strike her claim for punitive damages and to insert a claim under G.S. 75 *et seq.* seeking to treble her actual damages and obtain reasonable attorney's fees. Defendant Jerry Newton then moved to dismiss the counterclaims pursuant to Rule 12(b)(6). The trial court denied this motion. Defendant Jerry Newton then voluntarily dismissed the summary ejectment action without prejudice pursuant to Rule

41 of the North Carolina Rules of Civil Procedure. Defendants Paul Jeffrey Newton and Jerry Newton then moved for summary judgment as to plaintiff's counterclaims. The trial court denied both motions. Defendant Paul Jeffrey Newton gave notice of appeal from the denial of the summary judgment motion.

At the conclusion of the trial, the jury returned a verdict on all issues in favor of plaintiff. The jury awarded damages against each defendant. Plaintiff moved for attorney's fees against defendant Paul Jeffrey Newton pursuant to G.S. 75-16.1. The trial court denied this motion finding that there was no unwarranted refusal by the defendant to resolve plaintiff's claim. Defendants Paul Jeffrey Newton and Jerry Newton each moved for judgment notwithstanding the verdict on 8 March 1989 and 13 March 1989 respectively. The trial court denied both motions on 17 April 1989. Defendant Jerry Newton gave notice of appeal on 19 April 1989. Defendant Paul Jeffrey Newton gave notice of appeal 1 May 1989. Plaintiff moved to dismiss defendant Paul Jeffrey Newton's appeal on 5 June 1989 for his failure to comply with Rule 3 of the North Carolina Rules of App. Pro. The trial court granted this motion 3 July 1989 from which defendant Paul Jeffrey Newton now appeals. Plaintiff also filed notice of appeal as to defendant Paul Jeffrey Newton on 10 May 1989.

*Legal Aid Society of Northwest North Carolina, Inc., by Joseph P. Henry and Ellen W. Gerber, for plaintiff-appellant.*

*Petree Stockton & Robinson, by R. Rand Tucker and Mark A. Stafford, for defendant-appellant Jerry L. Newton, Jr.*

*Offices of Hamilton C. Horton, Jr., by Hamilton C. Horton, Jr. and Thomas M. Roth, III, for defendant-appellant Paul Jeffrey Newton.*

EAGLES, Judge.

I. DEFENDANT PAUL JEFFREY NEWTON'S APPEAL

[1] Defendant Paul Jeffrey Newton assigns as error the trial court's dismissal of his appeal for his failure to timely file notice of appeal in compliance with G.S. 1-279(c) and Rule 3 of the North Carolina Rules of App. Pro. Defendant Paul Jeffrey Newton contends that he had ten days to file his notice of appeal after defendant Jerry Newton filed his notice of appeal on 19 April 1989. We disagree.

Rule 3(c) of the Rules of App. Pro. provides that "[i]f a timely notice of appeal is filed and served by a party, any other party may file and serve a notice of appeal within 10 days after the first notice of appeal was served on such party." Rule 26(b) of the Rules of App. Pro. provides that "[c]opies of all papers filed by any party and not required by these rules to be served by the clerk shall, at or before the time of filing, be served on all other parties to the appeal."

In *Williams v. Carolina & Northwestern R.R.*, 144 N.C. 498, 57 S.E. 216 (1907), plaintiffs brought separate actions against defendant for damages resulting from defendant's failure to stop its train at a flag station to carry them to their destination. The two actions were tried together by consent and both plaintiffs appealed from a verdict against them. Our Supreme Court stated that there should have been separate appeals since "[t]he verdict was substantially separate as to each plaintiff, and the judgment and appeals should have corresponded, two cases being constituted here." *Id.* at 502, 57 S.E. at 218.

Here, defendant Paul Jeffrey Newton was not an original party to this action but brought into the suit by counterclaim of the plaintiff. Defendants Paul Jeffrey Newton and Jerry Newton were charged with separate violations for separate time periods that each managed the property. Each defendant was represented by his own counsel. The trial court carefully separated each issue as it related to each defendant and the jury rendered separate and distinct verdicts against each defendant. We hold that Rule 3(c) merely contemplates an additional, extended time period for a response only from other parties to that same appeal. Defendant Jerry Newton's appeal was totally unrelated and unaffected by the appeal of defendant Paul Jeffrey Newton. On 17 April 1989 the trial court entered an order in open court denying defendant Paul Jeffrey Newton's motion for JNOV and ordered the entry of the verdict in this action. Defendant Paul Jeffrey Newton did not file notice of appeal until 1 May 1989. This was clearly beyond the ten day period within which a party may file notice of appeal under Rule 3 (prior to its December 1988 amendment which became effective for judgments entered on and after 1 July 1989). Because the provisions of G.S. 1-279 and Rule 3(c) are jurisdictional, the appellate court acquires no jurisdiction of the appeal unless the statutes are complied with and the appeal must be dismissed. *First*

*Union National Bank v. King*, 63 N.C. App. 757, 759, 306 S.E.2d 508, 509 (1983).

Accordingly, we hold that the trial court correctly dismissed defendant Paul Jeffrey Newton's appeal for his failure to timely file notice of appeal.

## II.  PLAINTIFF'S APPEAL

[2] Plaintiff assigns as error the trial court's failure to treble all damages awarded by the jury against defendant Paul Jeffrey Newton. Plaintiff also assigns as error the trial court's refusal to award attorney's fees on the grounds that there was no unwarranted refusal by defendant Paul Jeffrey Newton to resolve plaintiff's claims.

We note that plaintiff moved to dismiss defendant Paul Jeffrey Newton's appeal for his failure to timely file notice of appeal. Here plaintiff appeals the award of damages as to defendant Paul Jeffrey Newton. Plaintiff gave notice of appeal on 10 May 1989. Final judgment in this action was entered in open court on 17 April 1989. Here plaintiff's appeal was within ten days of Paul Jeffrey Newton's purported appeal and pursuant to Rule 3(c) would have been timely; however, since Paul Jeffrey Newton's appeal was untimely, plaintiff is not entitled to an additional ten days in which to file her notice of appeal in the case against Paul Jeffrey Newton. Plaintiff's filing of her notice of appeal was clearly beyond the ten day period for filing notice of appeal as set out in Rule 3 of the Rules of App. Pro. in effect at that time. Plaintiff's appeal must also be dismissed for her failure to comply with Rule 3(c) of the Rules of App. Pro.

## III.  DEFENDANT JERRY NEWTON'S APPEAL

[3] Defendant first assigns as error the trial court's failure to grant directed verdict or judgment notwithstanding the verdict in his favor because he contends he was not a proper defendant for this rent abatement action. We disagree.

Initially we note that "[b]y the enactment in 1977 of the Residential Rental Agreements Act, N.C. Gen. Stat. Secs. 42-38 *et seq.*, our legislature implicitly adopted the rule, now followed in most jurisdictions, that a landlord impliedly warrants to the tenant that rented or leased residential premises are fit for human habitation. The implied warranty of habitability is co-extensive with the provi-

sions of the Act." *Miller v. C.W. Myers Trading Post, Inc.*, 85 N.C. App. 362, 366, 355 S.E.2d 189, 192 (1987). G.S. 42-38 provides that "[t]his Article determines the rights, obligations, and remedies under a rental agreement for a dwelling unit within this State." G.S. 42-40(3) defines "landlord" as "any owner and any rental management company, rental agency, or any other person having the actual or apparent authority of an agent to perform the duties imposed by this Article." G.S. 42-42(a) provides that

> (a) The landlord shall: (1) Comply with the current applicable building and housing codes, whether enacted before or after October 1, 1977, to the extent required by the operation of such codes; no new requirement is imposed by this subdivision (a)(1) if a structure is exempt from a current building code; (2) Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition; (3) Keep all common areas of the premises in safe condition; and (4) Maintain good and safe working order and promptly repair all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances supplied or required to be supplied by him provided that notification of needed repairs is made to the landlord in writing by the tenant except in emergency situations.

G.S. 42-44(a) further provides that "[a]ny right or obligation declared by this Chapter is enforceable by civil action, in addition to other remedies of law and in equity." "Tenants may bring an action for breach of the implied warranty of habitability, seeking rent abatement, based on their landlord's noncompliance with N.C.G.S. Sec. 42-42(a)." *Cotton v. Stanley*, 86 N.C. App. 534, 537, 358 S.E.2d 692, 694, *disc. rev. denied*, 321 N.C. 296, 362 S.E.2d 779 (1987).

Here defendant Jerry Newton argues that in *Collingwood v. General Electric Real Estate Equities, Inc.*, 89 N.C. App. 656, 659, 366 S.E.2d 901, 903 (1988), *rev'd in part on other grounds*, 324 N.C. 63, 376 S.E.2d 425 (1989), this court held that a manager was "merely managing" the property and could not be held liable under G.S. 42-42(a)(1) for design or construction defects. On the contrary, *Collingwood* merely held that a landlord who merely manages the property cannot be held liable for possible defects of design and construction if he complies with G.S. 42-42(a)(1).

On these facts, we hold that defendant Jerry Newton is a proper party for a rent abatement action. At trial plaintiff presented

SURRATT v. NEWTON

[99 N.C. App. 396 (1990)]

evidence that defendant had actual authority to repair and keep the premises in a fit and habitable condition and had failed to do so during her tenancy. As landlord, defendant's violation of the statute subjects him to liability for rent abatement. Accordingly, this assignment of error must fail.

[4] Defendant next assigns as error the trial court's failure to grant a directed verdict or judgment notwithstanding the verdict in favor of defendant Jerry Newton because plaintiff produced no evidence of notice as required by the statute. Defendant argues that "[u]nder the Residential Rental Agreement Act, an action for rent abatement requires that the tenant give the landlord notice of any defects in the property and that the landlord have a reasonable opportunity to cure such defects." Defendant also argues that the trial court erred in giving the following jury instructions:

> [W]ith regard to any defects in electrical, plumbing, sanitary, heating and other facilities or appliances supplied or required to be supplied by the defendant—for the purpose of the first issue, you may consider any such defect in the specific items enumerated only to the extent that any condition of either the electrical, plumbing, sanitary, heating facilities — or heating facilities were in such a defective condition so as to render the house in violation of the local building code or was such — was of such defective condition, nothing else appearing, so as to make the house unfit or uninhabitable.

Defendant argues that plaintiff cannot recover for those defects enumerated in G.S. 42-42(a)(4) unless written notice was given to the landlord. We disagree.

While G.S. 42-42(a)(4) does require written notification of needed repairs involving electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances supplied or required to be supplied by the landlord, the statute does not require written notification of these needed repairs if the repairs are necessary to put the premises in a fit and habitable condition or if the conditions constitute an emergency. Here the jury found that the conditions requiring repairs rendered the premises in an unfit and uninhabitable condition. Since the statute does not specifically require written notice of conditions of disrepair which render the premises in an unfit and uninhabitable condition, we conclude that where the conditions enumerated in G.S. 42-42(a)(4) are the

same conditions which render the premises unfit and uninhabitable no written notice is required under the statute.

Here plaintiff has introduced sufficient evidence of notice of the conditions required by law. During trial plaintiff testified that while she dealt primarily with Jeff Newton during most of her occupancy of the premises, she also talked with Jerry Newton who usually responded by sending someone out to the house. Plaintiff testified that she told defendant Jerry Newton that the house needed to be "fixed up, inspected and all." Whether plaintiff provided notice to defendant of needed repairs is an issue of fact to be resolved by the trier of fact. *See Miller, supra.* Here, the jury determined that plaintiff had given defendant the notice required by law and a reasonable opportunity to repair the conditions which violated the applicable building codes and the statute. Accordingly, this assignment of error must also fail.

**[5]** Next, defendant contends that the trial court erred in awarding damages against him. First, defendant argues alternatively that the lower court erred in permitting recovery in excess of the amount he received as commission for managing the property or the amount plaintiff paid in rent. In his brief, defendant argues that the amount awarded in damages in an action for rent abatement cannot exceed the amount actually paid in rent and as a result the trial court erred in not instructing the jury as to the maximum it could award and in entering judgment for an amount greater than the maximum which was permitted. We agree in part based on this court's opinion in *Miller*, 85 N.C. App. 362, 368, 355 S.E.2d 189, 192. The amount of the defendant-agent's fee is not a limitation on the amount of the recovery by plaintiff-tenant from the agent but the amount of rent paid is a limit on recovery from all parties in an action for rent abatement.

> [A] tenant may recover damages in the form of a rent abatement calculated as the difference between the fair rental value of the premises if as warranted (i.e. in full compliance with G.S. 42-42(a)) and the fair rental value of the premises in their unfit condition for any period of the tenant's occupancy during which the finder of fact determines the premises were uninhabitable, plus any special or consequential damages alleged and proved.

*Id.* at 371, 355 S.E.2d at 194.

SURRATT v. NEWTON

[99 N.C. App. 396 (1990)]

While we see nothing in the Act to preclude a tenant from recovering damages where she has withheld rent, damages for rent abatement can only include those amounts actually paid by plaintiff for substandard housing. "We construe these provisions to provide an affirmative cause of action to a tenant for recovery of *rent paid* [emphasis added] based on the landlord's noncompliance with G.S. 44-42(a). . . ." *Miller* at 368, 355 S.E.2d at 193.

[6] Secondly, defendant argues that the trial court's instruction that the jury could find defendant Jerry Newton liable for rent abatement from the period beginning 1 January 1986 to 2 February 1987 was in error since the plaintiff did not pay any rent from December 1986 through February 1987. Defendant contends that since the statute provides that the landlord and tenant obligations are mutually dependent and that a tenant may not unilaterally withhold rent prior to a judicial determination of a right to do so, plaintiff is precluded from recovering rent for the periods which in fact she paid none. While we agree that plaintiff is precluded from recovering rent for the periods in which she paid none, our decision is not based upon whether plaintiff unilaterally withheld rent but on this court's opinion in *Miller, supra.*

[7] Thirdly, defendant argues that the trial court erred in permitting recovery against Jerry Newton in an amount greater than the money he actually received from his work as agent. We have held *supra* that defendant here is a proper party based upon the statutory definition of "landlord." That defendant kept only a percentage of the rent paid by plaintiff does not limit plaintiff's recovery. Plaintiff has a claim for rent abatement against a landlord for the amount of rent paid. *Miller, supra.* No lesser measure of damages is recoverable against a landlord (as defined by G.S. 42-40(3)) merely because he is not the owner but is an agent. We do recognize a limit on the aggregate amount of damages arising from a wrong. Accordingly, defendant's argument is not persuasive.

[8] Fourth, defendant argues that the trial court erred in allowing plaintiff to guess the amount of money spent on repairs and admitting that testimony into evidence. While defendant did object to the admission of this testimony during trial, on appeal defendant contends that "[p]ermitting recovery based on a guess was plain error." He cites no authority for his contention. The plain error doctrine obtains only in criminal cases and is not available to aid civil litigation appellants. *See Alston v. Monk,* 92 N.C. App. 59,

373 S.E. 2d 463 (1988), *disc. rev. denied*, 324 N.C. 246, 378 S.E.2d 420 (1989). Even so our review indicates that any error was *de minimis*. The record indicates that plaintiff "guessed" with respect to damages only during one portion of her testimony and the "guess" testimony related only to the cost of fuses. The trial court did not err in allowing the testimony.

[9] Fifth, defendant contends that the damages awarded were contrary to the evidence of fair market value produced at trial. Defendant argues that because plaintiff introduced no additional evidence of the unit's value other than the amount of rent charged, the damages awarded were excessive. We disagree.

In *Cotton, supra*, this court stated that "[d]irect evidence of fair rental value is an opinion of what the premises would rent for on the open market from either an expert or a witness qualified by familiarity with the specific piece of property." 86 N.C. App. at 538, 358 S.E.2d at 695. "The fair rental value of property may be determined 'by proof of what the premises would rent for in the open market, or by evidence of other facts from which the fair rental value of the premises may be determined.' " *Id.* at 539, 358 S.E.2d at 695.

Here plaintiff presented sufficient evidence of the value of the property as warranted and the value of the property in its "as is" condition. During trial, plaintiff introduced the deposition testimony of defendant himself who testified that the fair rental value of 1712 East Third Street during the period he handled the property was $600.00 a month because it was a fine house and it only rented for less because of the nature of the neighborhood. Plaintiff testified that the rental value of the property in its then existing condition was between $100 and $150. From this testimony, the jury could determine a damage award.

[10] Sixth, defendant argues that the trial court should have granted a credit against the damage award for sums received in settlement with the landowners since there can be but one recovery for the same injury or damage. We agree.

"All of the authorities are to the effect that where there are joint tort-feasors there can be but one recovery for the same injury or damage, and that settlement with one of the tort-feasors releases the others; and, further, that when merely a covenant not to sue, as distinguished from a release, is executed by the injured party

to one joint tort-feasor for a consideration, the amount paid for such covenant will be held as a credit on the total recovery in actions against the other joint tort-feasors." *Holland v. Southern Public Utilities Co.*, 208 N.C. 289, 291, 180 S.E. 592, 593 (1935). While plaintiff brought separate and distinct actions against each defendant, plaintiff's claim against defendants Cleveland and Mildred Griffin was based upon the fact that they were the owners of the property and as a result were also responsible for the damages that plaintiff suffered throughout her tenancy. Since the record indicates in the order of the final pre-trial conference that plaintiff had settled her claims against defendants Cleveland and Mildred Griffin, defendant is entitled to have the judgment against him reduced by a credit in the amount of the proceeds paid by the Griffins.

Since the pleadings here pray for relief in rent abatement and do not seek damages for breach of the covenant of habitability, we expressly decline to address here the issue of whether damages for the breach of a covenant of habitability are limited to the amount of rent paid. But *see Miller v. C.W. Myers Trading Post, Inc.*, 85 N.C. App. 362, 370, 355 S.E.2d 189, 194 (1987); Fillette, North Carolina's Residential Rental Agreements Act: New Developments for Contract and Tort Liability in Landlord-Tenant Relations, 56 N.C.L. Rev. 785 (1978).

[11] Finally, defendant assigns as error the trial court's denial of his motion for a new trial. Defendant first argues that the trial court erred in its admission of certain evidence and in allowing the jury to view evidence during deliberation. Defendant also argues that the trial court erred in refusing to permit evidence that no plumbing problems existed after plaintiff vacated the premises. We disagree.

"We find no authority, however, which prohibits the court from permitting the jury to view the exhibits in the courtroom in its presence and in the presence of the parties. In that setting, where subject to objections by the parties and supervision by the court, the viewing may aid the fact-finding process. This is statutorily permitted in criminal trials, see G.S. 15A-1233(a), and we see no reason for a different rule in civil trials." *Nelson v. Patrick*, 73 N.C. App. 1, 14, 326 S.E.2d 45, 53 (1985). Here the trial court allowed the jury to view the exhibits in open court with no communication among them. It appears that the trial court's ruling complies with *Nelson*. With respect to the other evidentiary rulings

complained of, the trial court's decision will not be overturned absent an abuse of discretion. On this record, we see no abuse.

Defendant also argues that the trial court erred in its framing of the second and third issues in a manner as to permit an award of rent abatement damages for alleged defects for which defendant had no notice. Since the jury found that defendant did in fact have notice of the alleged defects by its answer to Issue No. 2, this contention has no merit.

Finally, defendant argues that he is entitled to a new trial because plaintiff was allowed to recover for defective conditions caused by plaintiff herself. Defendant contends that plaintiff-tenant in fact breached her obligations under the statute. "The appellate court will not consider arguments based upon issues which were not presented or adjudicated by the trial tribunal." *State v. Smith*, 50 N.C. App. 188, 190, 272 S.E.2d 621, 623 (1980). Since defendant failed to raise this defense during the trial, he cannot assert this as a basis for a new trial for the first time on appeal. Accordingly, this assignment of error is also overruled.

In summary, the appeals of both defendant Paul Jeffrey Newton and plaintiff are dismissed for failure to timely file notice of appeal. With respect to the appeal of defendant Jerry Newton we find no error in the lower court's decision with the exception of the award of rent abatement damages for the period in which plaintiff did not pay any rent and the failure to offset those damages against proceeds received in settlement with the owners of the property, Cleveland and Mildred Griffin. Accordingly, with respect to defendant Jerry Newton we remand this cause for amendment of judgment consistent with this opinion on the issue of damages only.

As to the appeal of defendant Paul Jeffrey Newton, dismissed.

As to the appeal of plaintiff Surratt, dismissed.

As to the appeal of defendant Jerry Newton, remand for amendment of judgment on the issue of damages only; no error in all other issues.

Judge WELLS concurs.

Judge GREENE concurs in the result.

SURRATT v. NEWTON

[99 N.C. App. 396 (1990)]

Judge GREENE concurring in the result.

I

I disagree with any suggestion by the majority that an action in rent abatement somehow differs from an action for breach of warranty for habitability. Rent abatement is merely one of the remedies for breach of warranty of habitability. *See Miller v. C. W. Myers Trading Post, Inc.*, 85 N.C. App. 362, 355 S.E.2d 189 (1987).

II

I agree that in an *affirmative* action (complaint or counterclaim) by a tenant for breach of warranty of habitability, the tenant who has paid no rent is not entitled to recover as damages the difference between the fair rental value of the premises as warranted and the fair rental value of the premises in unfit condition. Nonetheless, a non-paying tenant would be entitled to recover special and consequential damages, if the trier of fact determined that the landlord breached his statutory obligations under N.C.G.S. § 42-42(a) (1984). However, in *defense* of a summary ejectment action, a tenant who has defaulted in the payment of rent based on a landlord's breaches of his obligation to provide fit premises is entitled to an abatement of the rent due to the extent the agreed rent exceeds the fair rental value of the premises in their unfit condition.[1] I do not accept that in either situation, an affirmative or a defensive action by a tenant, that the tenant is barred by N.C.G.S. § 42-44(c) (1984) ("[t]he tenant may not unilaterally withhold rent prior to a judicial determination of a right to do so"); *see Webster's Real Estate* § 69 ("a default in rent payments coupled with a statutory defense for that default is not the same thing as intentional rent withholding").

Here, the tenant proceeded affirmatively as plaintiff and did not object to the instructions to the jury which did not include special and consequential damages as an element of the damage award. Accordingly, I join with the majority in remanding this cause for amendment of the judgment to exclude any damages for that period of time for which plaintiff did not pay rent.

---

1. "It is only after determining the amount of damages that the tenant has suffered because of the landlord's breach that a net amount of rent owed can be determined." P. Hetrick & J. McLaughlin, *Webster's Real Estate Law in North Carolina* § 70 n.41 (3d ed. Supp. 1989).

I agree with the majority that when "the conditions enumerated in G.S. 42-42(a)(4) are the same conditions which render the premises unfit and uninhabitable [pursuant to N.C.G.S. § 42-44(a)(2)] no written notice is required under the statute." *See Webster's Real Estate* § 67 (when a landlord has actual notice of defects under G.S. 42-42(a)(2), no written notice is required). Nonetheless, the tenant must prove that she has either given oral notice to the landlord of the defective condition of the premises or prove that the landlord was aware of the defective condition of the premises. *See Cotton v. Stanley*, 86 N.C. App. 534, 539, 358 S.E.2d 692, 696, *rev. denied*, 321 N.C. 296, 362 S.E.2d 779 (1987). As this court noted in the *Cotton* decision, the landlord's liability for damages does not arise until "after notice." *Id.* Here, I agree with the majority that there was sufficient evidence in the record to support a finding that the landlord had sufficient notice of the defective condition of the premises.