**VON PETTIS REALTY, INC. v. McKOY**

[135 N.C. App. 206 (1999)]

⸻

VON PETTIS REALTY, INC., Agent, and GERALD JOHNSON, Owner, Plaintiffs v.
DONNA McKOY, Defendant

No. COA98-1530

(Filed 5 October 1999)

**Landlord and Tenant— Residential Rental Agreements Act— breach of implied warranty of habitability**

The trial court did not err in upholding the jury's award of damages based on plaintiffs' violation of the North Carolina Residential Rental Agreements Act because: (1) the proper measure of damages in a rent abatement action based on a breach of the implied warranty of habitability is the difference between the fair rental value of the property in a warranted condition and the fair rental value of the property in its unwarranted condition, provided the damages do not exceed the total amount of rent paid by the tenant; and (2) the tenant is entitled to any special and consequential damages alleged and proved.

Appeal by plaintiffs from judgment dated 2 March 1998 and from order dated 11 June 1998 by Judge Richard D. Boner in Mecklenburg County District Court. Heard in the Court of Appeals 9 September 1999.

VON PETTIS REALTY, INC. v. McKOY

[135 N.C. App. 206 (1999)]

*Robinson, Bradshaw & Hinson, P.A., by Frank E. Emory, Jr. and Stephen M. Cox, for plaintiff-appellants.*

*Odom & Groves, P.C., by Stephen D. Koehler, for defendant-appellee.*

GREENE, Judge.

Von Pettis Realty, Inc. (Realty) and Gerald Johnson (Johnson) (collectively, Plaintiffs) appeal from a jury verdict and judgment in favor of Donna McKoy (Defendant), finding Plaintiffs violated the North Carolina Residential Rental Agreements Act (the Act), N.C.G.S. ch. 42, art. 5 (1994 & Supp. 1998), and engaged in unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1. Plaintiffs also appeal the trial court's order denying their Rule 59 motions for a new trial and Rule 11 motion for sanctions.

Johnson owned a house, used as a residence, located at 318 Whispering Pines, Charlotte, North Carolina (the property), and The Brokerage House Realty (Brokerage) managed the property. Sometime prior to 20 July 1995, the City of Charlotte Community Development Department notified Brokerage that the condition of the property violated several housing code provisions, and Brokerage forwarded this information to Johnson. Realty later succeeded Brokerage as manager of the property.

On 20 July 1995, Defendant and Johnson entered into a lease for the property. Defendant testified that when she entered into the lease Plaintiffs agreed to repair several defects on the property in a timely manner; however, Plaintiffs never repaired these defects.

Defendant resided at the property from 22 July 1995 to 29 November 1996, and paid monthly rent of $550.00. During Defendant's tenancy, the fair rental value of the property in a warranted condition (a condition in compliance with the Act) would have been $700.00; however, because Plaintiffs failed to make necessary repairs, the fair rental value of the property was $250.00 to $300.00.

On 1 September 1996, a defective wall outlet caused a power outage and a fire at the property. The fire department instructed Defendant to keep the power turned off until all defective outlets had been repaired, and Defendant reported the problem to Realty. On 4 September 1996 Defendant contacted the city inspector because the wall outlets had not yet been repaired.

On 5 September 1996, Plaintiffs filed a summary ejectment action against Defendant in the Small Claims Court of Mecklenburg County. The Small Claims Court granted Plaintiffs' petition for summary ejectment, and Defendant appealed to the Mecklenburg County District Court. Defendant also filed a counterclaim against Plaintiffs alleging Plaintiffs violated the Act and had engaged in unfair and deceptive trade practices. The case was placed in non-binding arbitration, with the arbitrator recommending an award for Defendant in the amount of $16,034.78. A trial de novo was then requested by Plaintiffs, pursuant to N.C. Gen. Stat. § 7A-37.1(b), and the case was tried in the district court.[1]

On 6 February 1998, the jury found Plaintiffs had violated the Act and awarded Defendant $6,400.00 in damages. The jury also made findings regarding the "unfit and uninhabitable" state of the house and, based on these findings, the trial court found Plaintiffs had engaged in unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1. The trial court awarded Defendant treble damages in the amount of $19,200.00, pursuant to N.C. Gen. Stat. § 75-16, and attorney's fees of $10,000.00, pursuant to N.C. Gen. Stat. § 75-16.1.

After the entry of the jury verdict,[2] Plaintiffs filed a written motion for a new trial on the issue of damages, pursuant to N.C. Gen. Stat. § 1A-1, Rule 59, on the ground "the evidence was insufficient to justify the verdict."[3]

---

The dispositive issue on appeal is how to measure damages in an action for breach of the implied warranty of habitability under the Act.

A tenant may bring an action for rent abatement against a landlord for breach of the implied warranty of habitability under the Act and recover damages. *Surratt v. Newton*, 99 N.C. App. 396, 404, 393 S.E.2d 554, 558-59 (1990) (citations omitted); *see also* N.C.G.S.

---

1. Plaintiffs did not contest at trial, and do not contest in this Court, the application of the Act to the property.

2. Before the entry of the jury verdict, Plaintiffs made an oral Rule 59 motion for a new trial on damages on the ground the damages verdict was "against the greater weight of the evidence." This motion was denied.

3. There were other grounds asserted but they are not material to the resolution of this case.

§ 42-42 (Supp. 1998). There are various opinions about the proper measure of those damages.

There are at least four formulas for measuring a tenant's damages for breach of the implied warranty of habitability. *See* 5 David A. Thomas, *Thompson on Real Property* § 40.23(c)(8)(vi)(B), at 189 (David A. Thomas ed., 1994). The first formula measures damages as the difference between the amount of rent agreed to in the lease and the fair rental value of the property in an unwarranted condition. *Id.* Under this formula, a tenant could recover for breach of warranty if at the time the parties entered into the lease the property was fully warranted, but subsequently became unwarranted. *Id.* A tenant could not recover, however, if at the time the parties entered into the lease the property was in an unwarranted condition, and the parties agreed to a rental amount that reflected the fair rental value of the property in the unwarranted condition. *Id.* This method would, therefore, permit a landlord to rent substandard housing without any possible liability for damages in a rent abatement action.

A second formula measures damages as the difference between the fair rental value of the property in a warranted condition and the fair rental value of the property in its unwarranted condition. *Id.* This formula would result in the same measure of damages as the first formula if the property was in a warranted condition at the time the parties entered into the lease but subsequently became unwarranted. *Id.* In contrast to the first formula, however, a tenant could also be awarded damages if the property was in an unwarranted condition at the time the parties entered into the lease and the amount of rent agreed to in the lease reflected the value of the property in its unwarranted condition. *Id.* at 189-90. Under this formula, though, a tenant could be awarded damages in excess of the total amount of rent paid, which could result in a landlord paying a tenant for leasing the property. *Id.* at 190. Further, this formula does not account for any benefit received by the tenant for use of the property in its unwarranted condition.

A third formula measures damages by determining the percentage of use lost by the tenant as a result of the unwarranted condition of the property, and reducing the agreed upon rent by that percentage. *Id.* at 189. This method requires the trier of fact to subjectively determine "the degree to which habitability has been diminished," *id.* at 190, and has therefore been characterized as a " 'civil fine levied on the landlord.' " *Id.* at 190 n.1202 (quoting Samuel Bassett Abbott,

*Housing Policy, Housing Codes and Tenant Remedies: An Integration*, 56 B.U. L. Rev. 1 (1976)).

A fourth possible method would measure damages as the difference between the fair rental value of the property as warranted and the fair rental value of the property in its unwarranted condition, but limit the damages to the total amount of rent paid by the tenant. Under this method, a tenant could receive an award of damages even if the parties entered into a lease setting rent at the fair rental value of the property in an unwarranted condition, but a tenant could not receive an award in excess of the total amount of rent actually paid by the tenant. This method, admittedly, fails to account for any benefit received by a tenant for use of the property in its unwarranted condition, but it does provide incentives for the landlord to provide housing consistent with the Act. We therefore believe this method provides the best balance of the competing public policy concerns raised by the various damages formulas. Furthermore, we believe this fourth method for measuring the damages is most consistent with this Court's previous opinions addressing damages in rent abatement actions. *See Miller v. C. W. Myers Trading Post, Inc.*, 85 N.C. App. 362, 371, 355 S.E.2d 189, 194 (1987); *Creekside Apartments v. Poteat*, 116 N.C. App. 26, 34, 446 S.E.2d 826, 831, *disc. review denied*, 338 N.C. 308, 451 S.E.2d 632 (1994); *Surratt v. Newton*, 99 N.C. App. 396, 407, 393 S.E.2d 554, 560 (1990).

Accordingly, we hold that the proper measure of damages in a rent abatement action based on a breach of the implied warranty of habitability is the difference between the fair rental value of the property in a warranted condition and the fair rental value of the property in its unwarranted condition; provided, however, the damages do not exceed the total amount of rent paid by the tenant. Additionally, the tenant is entitled to any "special and consequential damages alleged and proved." *Cotton v. Stanley*, 86 N.C. App. 534, 537, 358 S.E.2d 692, 694, *disc. review denied*, 321 N.C. 296, 362 S.E.2d 779 (1987).

In this case, Defendant paid monthly rent of $550.00 for a period of 16.23 months, or a total amount of $8,926.50. The fair rental value of the property during Defendant's tenancy was $250.00 per month, or a total amount of $4,057.50. The fair rental value of the property in a warranted condition would have been $700.00 per month, or a total amount of $11,361.00. The difference between the fair rental value of the property in a warranted condition and the fair rental value of the property in its unwarranted condition was $7,303.50. Thus $7,303.50, plus any special and consequential damages, constituted the maxi-

mum amount of rent abatement the Defendant was entitled to receive.[4] The jury's award of $6,400.00 was therefore permissible and the trial court correctly denied Plaintiffs' Rule 59 motions.

Plaintiffs have raised several other assignments of error which we have carefully reviewed and determine to be without merit.

No error.

Judges TIMMONS-GOODSON and HORTON concur.

---

4. We are unable to ascertain the amount of the special and consequential damages awarded in this case, if any, as the jury verdict form does not separate those damages into a separate issue. As the jury awarded a sum less than $7,303.50, the amount of the special and consequential damages, if any, therefore is not material in this case. The better practice would be for the trial court to provide a separate issue for the jury on these special and consequential damages.