CHARLOTTE D. TAYLOR, Plaintiff,
v.
MILDRED BATTS and CREECH & CO., Defendants.
No. COA09-196
Court of Appeals of North Carolina.
Filed January 5, 2010.
This case not for publication
Rose Rand Wallace Attorneys, P.A. by Jason R. Page and J. Brian Pridgen, for plaintiff-appellant.
Poyner Spruill LLP by Gregory S. Camp, for defendant-appellee.
STROUD, Judge.
Plaintiff appeals the trial court order allowing summary judgment in favor of defendant Creech & Co. For the following reasons, we affirm.

I. Background
On or about 2 October 2006, plaintiff filed a verified complaint against defendants Mildred Batts and Creech & Co. Plaintiff alleged that Mildred Batts owned and Creech & Co. managed a home she had leased. Plaintiff claimed that on 8 September 2005 she "fell through the floor" of the home and sustained injuries. Plaintiff brought causes of actions for breach of the implied warranty of habitability, negligence, and unfair and deceptive trade practices.
On 25 October 2006, Ms. Batts answered plaintiff's complaint and filed a motion to dismiss. On 18 December 2006, Creech & Co., filed an answer and a motion to dismiss. On or about 9 August 2007, defendant Creech & Co. filed a motion for summary judgment. On 23 August 2007, the trial court allowed Creech & Co.'s motion for summary judgment. On 4 December 2008, plaintiff voluntarily dismissed her claims against Ms. Batts with prejudice. Plaintiff now appeals the summary judgment order as to Creech & Co. only.

II. Standard of Review
[T]he standard of review is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. Summary judgment is appropriate when viewed in the light most favorable to the non-movant, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.
S.B. Simmons Landscaping v. Boggs, ___ N.C. App. ___, ___, 665 S.E.2d 147, 152 (2008) (citations and quotation marks omitted) (citing N.C. Gen. Stat. § 1A-1, Rule 56(c)).

III. Summary Judgment
Plaintiff claims that the trial court erred in allowing summary judgment in favor of defendant on her three claims for relief.

A. Breach of the Implied Warranty of Habitability
By the enactment in 1977 of the Residential Rental Agreements Act, N.C. Gen. Stat. Secs. 42-38 et seq., our legislature implicitly adopted the rule, now followed in most jurisdictions, that a landlord impliedly warrants to the tenant that rented or leased residential premises are fit for human habitation. The implied warranty of habitability is co-extensive with the provisions of the Act.
Miller v. C.W. Myers Trading Post, Inc., 85 N.C. App. 362, 366, 355 S.E.2d 189, 192 (1987) (citation omitted).
N.C. Gen. Stat. § 42-38 provides that, "This Article, [Chapter 42, Article 5], determines the rights, obligations, and remedies under a rental agreement for a dwelling unit within this State." N.C. Gen. Stat. § 42-38 (2005). N.C. Gen. Stat. § 42-42(a) requires that a landlord, inter alia, "[c]omply with the current applicable building and housing codes" and "make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." N.C. Gen. Stat. § 42-42(a)(1)-(2) (2005). A landlord is defined as "any owner and any rental management company, rental agency, or any other person having the actual or apparent authority of an agent to perform the duties imposed by this Article." N.C. Gen. Stat. § 42-40(3) (2005).
The facts establish that plaintiff and defendant had entered into a "RESIDENTIAL RENTAL CONTRACT" for a home in Wilson, North Carolina; therefore, Article 5 controls. See N.C. Gen. Stat. § 42-38. Furthermore, Ms. Batts and defendant had entered into a "PROPERTY MANAGEMENT AGREEMENT" whereby defendant agreed "to rent, to lease, to operate and manage the property[.]" Ms. Batts further authorized defendant, as her agent, "[t]o answer Tenant requests and complaints and to perform the duties imposed upon the Owner by law or pursuant to the tenant leases covering the Property[.]" Though defendant has claimed it was not actually authorized to perform repairs, considering the evidence in the light most favorable to plaintiff, see S.B. Simmons Landscaping at ___, 665 S.E.2d at 152, defendant was a landlord pursuant to N.C. Gen. Stat. § 42-40(3) as defendant had "actual or apparent authority of an agent to perform the duties imposed by this Article" through the "PROPERTY MANAGEMENT AGREEMENT[.]" See N.C. Gen. Stat. § 42-40(3).
Plaintiff alleged in her complaint that defendant was in violation of Article 5 because the floor in her bedroom was in need of repair and in violation of the housing code; plaintiff further alleged her injuries were caused by this violation. Specifically, plaintiff alleged in pertinent part as follows:
11. On September 8, 2005, while Plaintiff was making her bed, the floor of the Leased Premises collapsed, and Plaintiff fell through.
12. At the time the Plaintiff fell through the floor of the Leased Premises, said Leased Premises were in violation of the City Housing Code, Chapter 43 of the Code of the City of Wilson, North Carolina in that the floor had not been kept in sound condition or good repair, that the floors were not safe to use and that they were not capable of supporting the load which normal use may cause to be placed thereon.
. . . .
19. By leasing the Leased Premises to Plaintiff, Defendants impliedly warranted that they would "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." N.C. Gen. Stat. § 42-42(a).
. . . .
21. Upon information and belief, at all times mentioned herein, the Leased Premises was unsafe, unfit and uninhabitable, and was in violation of the City Housing Code, Chapter 43 of the Code of the City of Wilson, North Carolina.
Although plaintiff forecast evidence of her notifications to defendant of various repairs which were needed in the house, she never notified anyone of any need to repair the bedroom floor; in fact, she was apparently unaware of the condition of the floor until she fell through it. Defendant argues that plaintiff cannot recover damages for her injuries caused by an alleged breach of the implied warranty of habitability where it had no notice of or reason to know of the defect or any need for repair prior to the incident in which plaintiff was injured.
In Surratt v. Newton, this Court determined that "where the conditions enumerated in G.S. 42-42(a)(4) are the same conditions which render the premises unfit and uninhabitable no written notice is required under the statute."[1] 99 N.C. App. 396, 405-06, 393 S.E.2d 554, 559 (1990). However, this Court went on to note that the plaintiff had actually provided defendant with notice of the condition, even though the notice was not in writing. See id. at 406, 393 S.E.2d at 559.
Here plaintiff has introduced sufficient evidence of notice of the conditions required by law. During trial plaintiff testified that while she dealt primarily with Jeff Newton during most of her occupancy of the premises, she also talked with Jerry Newton who usually responded by sending someone out to the house. Plaintiff testified that she told defendant Jerry Newton that the house needed to be "fixed up, inspected and all." Whether plaintiff provided notice to defendant of needed repairs is an issue of fact to be resolved by the trier of fact. Here, the jury determined that plaintiff had given defendant the notice required by law and a reasonable opportunity to repair the conditions which violated the applicable building codes and the statute. Accordingly, this assignment of error must also fail.
Id. (citation omitted). This Court's analysis in Surratt concludes that while written notice of needed repairs is not required, the landlord must have some form of notice so that there is a reasonable opportunity to repair the condition. See id. at 405-06, 393 S.E.2d at 559. We conclude that the landlord must have some notice or reason to know of the defective condition of the property before the landlord can be held liable for injuries caused by the condition. We do not believe that Chapter 42, Article 5 of the North Carolina General Statutes establishes strict liability of the landlord for conditions of the property of which the landlord has no notice or reason to know.
Viewing the evidence in the light most favorable to plaintiff, see S.B. Simmons Landscaping at ___, 665 S.E.2d at 152, she has not forecast any evidence that defendant was made aware of any need for repairs to the floor prior to her fall, either by notification by the plaintiff or in any other manner. Plaintiff has not forecast any evidence that defendant had any reason to believe that the floor needed repairs prior to her fall. Because plaintiff has failed to show that defendant had the required notice, the trial court correctly allowed summary judgment in favor of defendant.

B. Negligence
Plaintiff also brought a cause of action for negligence. Plaintiff contends that
Creech & Co. relies on an inspection that did not evaluate the structural integrity of the house and that may have been up to six months old . . . . The City inspector did not crawl under the house, did not check under the carpet, and did not move furniture . . . . [Plaintiff] contends that it was Creech & Co.'s duty to ensure that someone did so.
N.C. Gen. Stat. § 42-44(d) provides that "[a] violation of this Article shall not constitute negligence per se." N.C. Gen. Stat. § 42-44(d) (2005).
By providing that a violation of this Article shall not constitute negligence per se, the legislature left intact established common-law standards. The common-law standard of care is a generalized one of due care on the part of the defendant. The standard of due care is always the conduct of a reasonably prudent person under the circumstances.
Collingwood v. G.E. Real Estate Equities, 324 N.C. 63, 68, 376 S.E.2d 425, 428 (1989) (brackets, quotation marks, and citations omitted). Pursuant to the common law, "it is well settled that a landlord has a duty to warn of or repair latent defects only when he knows or should by reasonable inspection know of their existence." Bradley v. Wachovia Bank & Trust Co., 90 N.C. App. 581, 584, 369 S.E.2d 86, 88 (1988) (emphasis added).
Once again, plaintiff has failed to forecast any evidence that defendant "kn[e]w[] or should by reasonable inspection [have] know[n]" of the existence of the floor defect. Id. Plaintiff had not informed defendant of any concerns about the floor and the house had received a "Minimum Housing Code Compliance Notice" from its last inspection prior to plaintiff's fall. Although plaintiff alleges that defendant had relied upon an inspection which "did not evaluate the structural integrity of the house and that may have been up to six months old[,]" plaintiff has not forecast any evidence indicating that defendant had a duty to evaluate the "structural integrity" of the house at any particular frequency or that defendant had any reason to believe that the city's inspection of the home was inadequate. Viewing the evidence in the light most favorable to plaintiff, see S.B. Simmons Landscaping at ___, 665 S.E.2d at 152, there may be an issue as to whether the housing inspector for the City of Wilson did his job correctly; in fact, after plaintiff's fall, the City of Wilson issued a letter noting that the house was "in violation of the City Housing Code[.]" The floor was rotted to such an extent that the condition may well have been present at the time of the last inspection. However, plaintiff has not forecast any evidence that it was unreasonable for defendant to rely upon the city's compliance notice. As plaintiff has not forecast any evidence that defendant was aware or should have been aware of the condition of the floor prior to her fall, especially considering that she herself was apparently unaware of its condition, summary judgment was appropriately allowed in favor of defendant.

C. Unfair and Deceptive Trade Practices
Lastly, plaintiff contends that "there is a question of fact as to whether Creech & Co. knew or should have known that the Property was unfit" for purposes of a cause of action pursuant to N.C. Gen. Stat. § 75-16 regarding unfair and deceptive trade practices. However, once again we conclude that plaintiff did not forecast any evidence that defendant knew or should have known about any defects with the floor.
In order to prevail under Chapter 75, a litigant must prove that the other party committed an unfair or deceptive act or practice, that the action in question was in or affecting commerce, and that said act proximately caused actual injury to the litigant. Conduct is unfair or deceptive if it has the capacity or tendency to deceive the average consumer. Proof of actual deception is not required. A trade practice is unfair within the meaning of § 75-1.1 when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.
Creekside Apartments v. Poteat, 116 N.C. App. 26, 36, 446 S.E.2d 826, 833, disc. review denied, 338 N.C. 308, 451 S.E.2d 632 (1994) (citations and quotation marks omitted). It appears that in the context of housing, our courts have concluded that just as for a negligence claim, in order to be liable under N.C. Gen. Stat. § 75-16 of the North Carolina General Statutes, defendant must have known or at least have a reason to know of the alleged unfair and deceptive act. See generally id. at 37-38, 446 S.E.2d at 833-34 (holding "that the trial court's dismissal of defendant's unfair practices counterclaim was in error" and noting that "the trial court concluded that plaintiff had due notice of problem conditions and Code violations at the premises and did not make reasonable efforts to alleviate these conditions and violations until July 1992"); Allen v. Simmons, 99 N.C. App. 636, 644-45, 394 S.E.2d 478, 484 (1990) (holding "that a jury could find that plaintiff committed an unfair trade practice and the trial court erred in not submitting this issue to the jury" after noting that the "plaintiff had received numerous notices including notices dated 13 October 1986, 14 January 1987 and 23 March 1987 about the unfit and uninhabitable state of the house but plaintiff failed to respond to any of them"). Accordingly, the trial court properly granted summary judgment on this issue.

IV. Conclusion
As plaintiff failed to forecast evidence that defendant had any notice or reason to know of the defective condition of the floor prior to her fall, we affirm the trial court's order allowing summary judgment in favor of defendant.
AFFIRMED.
Judges GEER and ERVIN concur.
Report per Rule 30(e).
NOTES
[1] Effective October 1, 2009, N.C. Gen. Stat. § 42-42(a) has been amended by Session Law 2009-279 to require that the landlord have "actual knowledge or receiv[e] notice" before a duty to repair "unsafe flooring" arises. See 2009-2 N.C. Adv. Legis. Serv. 254-55 (LexisNexis).