HARVEY H. ALLEN, Plaintiff v. WARNELL SIMMONS, Defendant

No. 8921DC1155

(Filed 7 August 1990)

**1. Landlord and Tenant § 19.1 (NCI3d) — rent abatement — directed verdict for landlord — error**

The trial court should not have granted a directed verdict against defendant tenant, who had counterclaimed for rent abatement, where there was sufficient evidence to go to the jury on whether the house was uninhabitable during the period in which defendant did in fact pay rent and there was evidence of the value of the premises in a fit condition and its value in an uninhabitable state. Nothing in the Residential Rental Agreements Act precludes the tenant from recovering damages for breach of the covenant of habitability where she has withheld rent; however, damages for rent abatement could only include those amounts actually paid for substandard housing. N.C.G.S. § 42-38 *et seq.*

**Am Jur 2d, Landlord and Tenant §§ 614-616.**

**2. Fraud § 4 (NCI3d) — landlord — representations concerning repairs — directed verdict for landlord**

The trial court properly entered directed verdict on a claim for fraud where defendant alleged in a counterclaim that plaintiff fraudulently induced defendant to rent unfit premises by promising to make needed repairs; defendant's evidence shows that plaintiff's agent did in fact make the repairs, albeit not to the satisfaction of defendant; and there is no evidence that at the time of his promise plaintiff intended not to make the repairs.

**Am Jur 2d, Landlord and Tenant § 791.**

**3. Unfair Competition § 1 (NCI3d) — landlord — substandard housing — unfair trade practice**

A jury could find on the record that plaintiff committed an unfair trade practice and the trial court erred in not submitting factual issues to the jury where defendant has shown that, as a lessee of a residential dwelling, she is a member of the consuming public; there is evidence that plaintiff had made an arrangement with Scott Realty to act as his agent

in leasing this particular house; Scott Realty was in fact engaged in the business of selling and leasing real estate; defendant has presented evidence that the house contained numerous defects which existed throughout her tenancy and rendered the house unfit and uninhabitable; plaintiff received numerous notices about the unfit and uninhabitable state of the house but failed to respond; Scott Realty attempted to collect rent after defendant discontinued payments and plaintiff even went to defendant's house in an effort to collect past due rent; as a result of the unfit conditions defendant suffered additional expenses associated with the house; and plaintiff's behavior can be considered immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

**Am Jur 2d, Landlord and Tenant § 791; Monopolies, Restraints of Trade, and Unfair Trade Practices § 735.**

**4. Trespass § 2 (NCI3d) — landlord — substandard housing — intentional infliction of emotional distress — not shown**

Defendant's claim for intentional infliction of emotional distress arising from the condition of housing which she rented from plaintiff failed because she did not produce evidence that she suffered serious mental distress or any bodily harm resulting from mental distress.

**Am Jur 2d, Landlord and Tenant §§ 791, 793.**

**5. Damages § 17.7 (NCI3d) — landlord — intentional infliction of mental distress not shown — no punitive damages**

The trial court did not err in not submitting punitive damages arising from the leasing of substandard housing where plaintiff failed to present evidence of intentional infliction of mental distress.

**Am Jur 2d, Damages § 259.**

**6. Evidence § 28 (NCI3d) — landlord — public records — admissible**

The trial court erred in a rent abatement action by refusing to allow the Housing Conservation Administrator to testify about public records already admitted and their significance; however, there was no prejudice in refusing the witness permission to read from the records because the records themselves had already been admitted into evidence.

**Am Jur 2d, Evidence §§ 991, 999.**

APPEAL by defendant from judgment entered 12 June 1989 by *Judge Abner Alexander* in FORSYTH County District Court. Heard in the Court of Appeals 2 May 1990.

This is an action seeking rent abatement and damages resulting from fraudulent representations, intentional infliction of emotional distress, unfair and deceptive trade practices and punitive damages. Defendant and her deceased husband rented property located at 1803 North Liberty Street, Winston-Salem, North Carolina from plaintiff through his agent Scott Realty. Prior to moving into the house, defendant visited the house with a man from Scott Realty. On this initial visit defendant found and pointed out several defects in the property. The defects included: holes in some of the walls; a damaged faucet on the kitchen sink; electrical problems, plumbing that leaked in the bathroom and in the basement; a damaged commode; a damaged hot water heater; fleas; broken glass; and no furnace. Scott Realty, acting as plaintiff's agent, allegedly promised to make the needed repairs before defendant moved into the house. Defendant agreed to pay two hundred dollars per month rent and moved into the house in November 1985. Defendant discontinued rent payments after the August 1986 payment. She vacated the premises in July 1987. Plaintiff initiated a summary ejectment action against defendant in magistrate's court on 10 March 1987. Defendant filed an Answer and Counterclaim on 23 March 1987. On 8 April 1987 plaintiff prevailed in the summary ejectment action. Defendant gave notice of appeal to the district court on 5 June 1987.

During trial, defendant testified that even when she first moved into the premises many of the needed repairs had not been done. Defendant further testified that every time she paid rent, she orally informed Scott Realty "about the holes, the furnace and everything else that was wrong with the house." She testified that she even "wrote down what was wrong with the house and carried it" to Scott Realty. Defendant testified that after she moved in, plaintiff installed a hot water heater in the house and sent someone out to see about the lights, to fix the electric plugs in the wall, to put a spigot in the bathroom and to fix the commode, but except for the hot water heater, many of the attempted repairs did not correct the problems. She stated that plaintiff did not install a furnace until the last day before she moved out in July 1987. Defendant testified that the holes in the wall and the hole under the kitchen sink were never fixed. She stated that big rats that "[l]ooked like little kittens" would come through the holes in her

ALLEN v. SIMMONS

[99 N.C. App. 636 (1990)]

walls. Defendant further testified that Mr. Wilson did in fact send someone out to put a piece of "plyboard" over the hole under the sink but the rats would cut through it again. Defendant further testified that she had problems with her pipes bursting the first winter she lived in the house because the house had no heat other than the wood stove that she had installed. She stated that the wood stove only heated the front room and the back bedroom, leaving the rest of the house cold. Defendant testified that she would leave her "cook stove oven" on and that she eventually bought an "oil circulator" but still could not heat the entire house. Defendant testified that during her tenancy, the house caught on fire from defective electrical wires. She stated that she did not see plaintiff for the first time until after the fire. She testified that plaintiff returned once again in February 1987 to demand two hundred dollars for rent. Defendant testified that she stopped paying rent after August 1986 because plaintiff did not fulfill his promise to fix the house.

During trial, Darwin Hudler, the Housing Conservation Administrator for the City of Winston-Salem Housing Services Department, testified that the house had been declared unfit for human habitation as early as 12 July 1983; however, those conditions were corrected and the house was deemed fit for human habitation on 4 June 1984. Hudler further testified that from October of 1985 through August of 1986, defendant had not complained to the City of Winston-Salem concerning the fitness of the property for habitation. On 5 September 1986, while defendant was still an occupant of the premises, the house was declared unfit by city officials. The following deficiencies requiring attention were listed on the Housing Inspection Report: "Replace broken window panes; Install door knobs; Repair plumbing leak under structure; Install non-absorbent material on toilet room floor; Repair commode; Repair sink fixtures; Replace [heating] 'thimble'; Repair defective light fixtures; Install loose floor covering in kitchen; Paint or treat exterior wood with protective coating; Repair holes in walls and ceilings; Replace loose wall and ceiling materials; Repair or replace steps at interior; Repair or replace handrail at interior steps; Maintain floors, walls, ceilings and fixtures in clean and sanitary condition; Clean yard of rubbish, trash and garbage; Remove heavy undergrowths; Have structure exterminated of insects, rodents and other pests; Ceiling insulation is now required in all dwellings."

ALLEN v. SIMMONS

[99 N.C. App. 636 (1990)]

At the close of all the evidence, the trial court entered directed verdict against defendant on her counterclaims seeking damages for fraud, retroactive rent abatement and other damages including excessive utility costs, damages for intentional infliction of emotional distress, unfair and deceptive trade practice damages, and punitive damages. Plaintiff's motion to dismiss his action without prejudice was then allowed. Defendant appeals.

*Kennedy, Kennedy, Kennedy and Kennedy, by Harold L. Kennedy, III and Harvey L. Kennedy, for plaintiff-appellee.*

*Legal Aid Society of Northwest North Carolina, Inc., by Hazel M. Mack, for defendant-appellant.*

EAGLES, Judge.

[1] Defendant assigns as error the trial court's entry of directed verdict against her. Defendant argues that when the evidence is considered in the light most favorable to defendant, it is sufficient to justify submission of her counterclaims to the jury. Defendant argues that "the evidence that the premises never met city code standard was sufficient to allow the jury to decide whether defendant is entitled to rent abatement." We agree.

Initially we note that

[i]n reviewing the grant of a directed verdict on appeal, we "must consider all the evidence in the light most favorable to the plaintiff and may grant the motion only if, *as a matter of law*, the evidence is insufficient to justify a verdict for the plaintiff." "[T]he evidence in favor of the nonmovant must be deemed true, all conflicts in the evidence must be resolved in his favor and he is entitled to the benefit of every inference reasonably to be drawn in his favor."

*Kuykendall v. Turner*, 61 N.C. App. 638, 641, 301 S.E.2d 715, 718 (1983). (Citations omitted.)

"By the enactment in 1977 of the Residential Rental Agreements Act, N.C. Gen. Stat. Secs. 42-38 *et seq.*, our legislature implicitly adopted the rule, now followed in most jurisdictions, that a landlord impliedly warrants to the tenant that rented or leased residential premises are fit for human habitation. The implied warranty of habitability is co-extensive with the provisions of the Act." *Miller v. C.W. Myers Trading Post, Inc.*, 85 N.C. App. 362, 366, 355 S.E.2d

189, 192 (1987). G.S. 42-38 provides that "[t]his Article determines the rights, obligations, and remedies under a rental agreement for a dwelling unit within this State." G.S. 42-40(3) defines "landlord" as "any owner and any rental management company, rental agency, or any other person having the actual or apparent authority of an agent to perform the duties imposed by this Article." G.S. 42-42(a) provides that

> (a) The landlord shall: (1) Comply with the current applicable building and housing codes, whether enacted before or after October 1, 1977, to the extent required by the operation of such codes; no new requirement is imposed by this subdivision (a)(1) if a structure is exempt from a current building code; (2) Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition; (3) Keep all common areas of the premises in safe condition; and (4) Maintain in good and safe working order and promptly repair all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances supplied or required to be supplied by him provided that notification of needed repairs is made to the landlord in writing by the tenant except in emergency situations.

G.S. 42-44(a) further provides that "[a]ny right or obligation declared by this Chapter is enforceable by civil action, in addition to other remedies of law and in equity." Tenants may bring an action seeking damages for breach of the implied warranty of habitability and may also seek rent abatement for their landlord's breach of the statute. *See Surratt v. Newton*, 99 N.C. App. 396, 393 S.E.2d 554 (1990).

> [A] tenant may recover damages in the form of a rent abatement calculated as the difference between the fair rental value of the premises if as warranted (i.e., in full compliance with G.S. 42-42(a) ) and the fair rental value of the premises in their unfit condition for any period of the tenant's occupancy during which the finder of fact determines the premises were uninhabitable, plus any special or consequential damages alleged and proved.

*Miller* at 371, 355 S.E.2d at 194.

In his brief, plaintiff argues that by unilaterally withholding rent prior to a "judicial determination," under G.S. 42-44(c) defend-

ant waived her right to bring any action which arose out of her tenancy. Nothing in the Act precludes a tenant from recovering damages for breach of the covenant of habitability where she has withheld rent; however, damages for rent abatement can only include those amounts *actually paid* by defendant for substandard housing. *See Surratt, supra.* "We construe these provisions to provide an affirmative cause of action to a tenant for recovery of rent paid based on the landlord's noncompliance with G.S. 44-42(a). . . ." *Miller* at 368, 355 S.E.2d at 193.

During trial, defendant testified that many of the conditions found to be in violation of the Winston-Salem Housing Code existed at the time she moved in the house and that plaintiff's attempts at correcting those conditions were either unsuccessful or temporary. On these facts there is sufficient evidence to go to the jury on whether the house was uninhabitable during the period in which plaintiff did in fact pay rent. There is evidence of the value of the premises in a fit condition and its value in its uninhabitable state. On this record there is sufficient evidence for the jury to determine whether defendant was entitled to rent abatement.

[2] Secondly, defendant contends that there is evidence from which a jury could find that plaintiff fraudulently induced defendant to rent unfit premises by promising to make needed repairs. Defendant contends that plaintiff falsely promised to repair the property "knowing that he had no intent of making the investment necessary to repair the property properly." We disagree.

"The 'constituent elements' which must be established to prove actual fraud are: (1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Shreve v. Combs,* 54 N.C. App. 18, 21, 252 S.E.2d 568, 571 (1981). "In order for a promissory representation to be the basis of an action for fraud, facts must be alleged from which a court and jury may reasonably infer that the defendant did not intend to carry out such representations when they were made. This amounts to a misrepresentation of an existing fact." *Whitley v. O'Neal,* 5 N.C. App. 136, 139, 168 S.E.2d 6, 8 (1969). A principal is liable for the acts of its agent acting within the range of the agent's employment, even if not expressly author-

ized by the agent. *See Snow v. DeButts*, 212 N.C. 120, 193 S.E. 224 (1937).

Defendant has presented a forecast of evidence that Scott Realty was an agent of plaintiff acting within the scope of its agency during the time that employees of Scott Realty were showing defendant the rental property. Prior to defendant's agreement to rent the house plaintiff's agent represented that he would make the needed repairs. Here, however, during trial defendant testified that Scott Realty had made repairs to the premises although she felt that they (repairs) "didn't do no good." Defendant's evidence shows that plaintiff's agent did in fact make the repairs albeit not to the satisfaction of defendant. We find no evidence that at the time of his promise plaintiff intended not to make the repairs he was promising to make. Accordingly, the trial court properly entered directed verdict on the issue of fraud.

[3] Next, defendant contends that the evidence was sufficient to permit factual findings by the jury that the plaintiff committed an unfair trade practice. Defendant contends that the house was "deplorable" at the time she rented the property. Defendant argues that plaintiff was aware of the needed repairs but did not honor his promise to correct the deficiencies. Defendant further argues that the premises were unfit for human habitation, but plaintiff himself visited the premises to demand rent for unfit premises in February 1987. Defendant contends that the conditions complained of throughout her tenancy were the same unfit conditions identified by the City in the September 1986 inspection report. Defendant contends that "the plaintiff's behavior is at the very least unfair and fits all the definitions that the courts have used in determining the types of acts prohibited by Chapter 75." We agree.

The purpose of G.S. Chapter 75 is "to provide means of maintaining 'ethical standards of dealings . . . between persons engaged in business and the consuming public' and to promote 'good faith and fair dealings between buyers and sellers. . . .' " *Love v. Pressley*, 34 N.C. App. 503, 517, 239 S.E.2d 574, 583 (1977), *disc. rev. denied*, 294 N.C. 441, 241 S.E.2d 843 (1978).

Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace. A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially in-

ALLEN v. SIMMONS

[99 N.C. App. 636 (1990)]

jurious to consumers. As also noted in *Johnson*, under Section 5 of the FTC Act, a practice is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required. Consistent with federal interpretations of deception under Section 5, state courts have generally ruled that the consumer need only show that an act or practice possessed the tendency or capacity to mislead, or created the likelihood of deception, in order to prevail under the states' unfair and deceptive practices act.

If unfairness and deception are gauged by consideration of the effect of the practice on the marketplace, it follows that the intent of the actor is irrelevant. Good faith is equally irrelevant. What is relevant is the effect of the actor's conduct on the consuming public. Consequently, good faith is not a defense to an alleged violation of G.S. 75-1.1.

*Mosley & Mosley Builders, Inc. v. Landin Ltd.*, 97 N.C. App. 511, 517, 389 S.E.2d 576, *disc. rev. denied*, 326 N.C. 801, 393 S.E.2d 898 (1990), *quoting Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). "As an essential element of a cause of action under G.S. 75-16, plaintiff must prove not only that defendants violated G.S. 75-1.1, but also that plaintiff has suffered actual injury as a proximate result of defendants' misrepresentation." *Bailey v. LeBeau*, 79 N.C. App. 345, 352, 339 S.E.2d 460, 464 (1986), *decision affirmed as modified by* 318 N.C. 411, 348 S.E.2d 524 (1986). The conduct must be fraudulent or deceptive. *Coble v. Richardson Corp.*, 71 N.C. App. 511, 322 S.E.2d 817 (1984). "[T]he rental of residential housing is 'trade or commerce' under G.S. 75-1.1." *Love* at 516, 239 S.E.2d at 583.

Here defendant has shown that as lessee of a residential dwelling she is a member of the consuming public. In this record there is evidence that plaintiff had made an arrangement with Scott Realty to act as his agent in leasing this particular house. By Mr. Alfred Scott's own admission during trial, Scott Realty was in fact engaged in the business of selling and leasing real estate. Defendant has presented evidence that the house contained numerous defects which existed throughout her tenancy and rendered the house unfit and uninhabitable. Here plaintiff had received numerous notices including notices dated 13 October 1986, 14 January 1987 and 23 March 1987 about the unfit and uninhabitable state of the house but plaintiff failed to respond to any of them. Despite the

**ALLEN v. SIMMONS**

[99 N.C. App. 636 (1990)]

unfit conditions of the house, Scott Realty attempted to collect rent after defendant discontinued payments and plaintiff even went to defendant's house in February 1987 in an effort to collect past due rent for the unfit house. That behavior can be considered "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *See Mosley, supra.* As a result of the unfit conditions defendant suffered additional expenses associated with the house. We hold on this record that a jury could find that plaintiff committed an unfair trade practice and the trial court erred in not submitting the factual issues to the jury.

[4] Defendant next contends that the trial court erred in failing to submit to the jury the issue of intentional infliction of emotional distress damages. Defendant argues that plaintiff's conduct exceeded the bounds of decent society which are set out in the Winston-Salem City Code and G.S. 42 *et seq.* Defendant further argues that since plaintiff was "trapped in [a] situation with malfunctioning plumbing, no heat, rats and dangerously defective wiring," a jury could find that she suffered emotional distress. Defendant contends that plaintiff's intent to cause emotional distress can be inferred from continuing to demand rent while ignoring three city orders that condemned the property.

> The tort of intentional infliction of mental or emotional distress was formally recognized in North Carolina by the decisions of our Supreme Court in *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979). The claim exists "when a defendant's 'conduct exceeds all bounds usually tolerated by decent society' and the conduct 'causes mental distress of a very serious kind.'" *Id.* at 196, 254 S.E.2d at 622, *quoting* Prosser, The Law of Torts, § 12, p. 56 (4th Ed. 1971). The elements of the tort consist of: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress. *Dickens v. Puryear, supra.*

> The tort may also exist where defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress. Recovery may be had for the emotional distress so caused and for any other bodily harm which proximately results from the distress itself. *Id.* at 452-53, 276 S.E.2d at 335.

*Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 487-88, 340 S.E.2d 116, 119-20, *disc. rev. denied*, 317 N.C. 334, 346 S.E.2d 140, 346 S.E.2d 141 (1986).

Here, defendant's claim fails because on this record she has not produced evidence that she suffered "mental distress of a serious kind" or any other bodily harm resulting from mental distress. Accordingly, this contention is without merit.

[5]   Next defendant contends that the trial court erred in failing to submit the issue of punitive damages to the jury. Defendant contends that she has a claim under Chapter 42 as well as an identifiable tort, the intentional infliction of emotional distress. Defendant argues that the tort itself does not justify an award of punitive damages but the plaintiff's willful refusal to provide the defendant with fit and habitable conditions justifies an award of punitive damages. We disagree.

As we have previously determined, defendant has failed to present evidence of intentional infliction of emotional distress, which she contends is an identifiable tort required for an award of punitive damages. Accordingly, the trial court did not err in declining to submit this issue to the jury. *See Oestreicher v. American National Stores, Inc.*, 290 N.C. 118, 225 S.E.2d 797 (1976).

[6]   Finally, defendant assigns as error the trial court's refusal to allow defendant's witness, Darwin Hudler, to testify concerning his personal knowledge about documents already admitted into evidence and to read from those documents already admitted into evidence. Defendant contends that "[u]nder the rules of evidence, Mr. Hudler 'can testify about the records so long as the records themselves were admissible under the business record (sic) exception [or any other exception] to the hearsay rule' " and the witness is familiar with the system in which the records were made and maintained, citing *U.S. Leasing Corp. v. Everett, Creech, Hancock & Herzig*, 88 N.C. App. 418, 363 S.E.2d 665, *disc. rev. denied*, 322 N.C. 329, 369 S.E.2d 364 (1988). We agree.

Here the witness testified that the records were public, kept in the ordinary course of business and prepared under his personal supervision at or near the time of the inspections. Under the rationale of *U.S. Leasing, supra*, the witness should have been permitted to testify about the records and their significance. In her brief defendant also argues that the trial court erred in refusing to

allow the witness to read from the official record already admitted into evidence. Here, since the records themselves were admitted into evidence, any error in refusing the witness permission to read from the records is not prejudicial to defendant.

Defendant has failed to address assignments of error numbers 7 and 8 in her brief. Pursuant to Rule 28 they are deemed abandoned.

In summary, with respect to defendant's claims for rent abatement and unfair and deceptive trade practices, we remand this cause for a new trial. With respect to the issues concerning alleged fraud, intentional infliction of emotional distress and punitive damages, we affirm the trial court.

Affirmed in part; reversed in part and remanded.

Chief Judge HEDRICK and Judge JOHNSON concur.