CREEKSIDE APARTMENTS, Plaintiff-Appellee v. MYRTLE POTEAT, CAREY SILER, RODNEY CURRIE, ROVENA DAWKINS, Defendants-Appellants

No. 9315DC894

(Filed 16 August 1994)

1. **Landlord and Tenant § 60 (NCI4th)— breach of implied warranty of habitability—trial court's denial in contradiction of own finding**

   The trial court erred in denying defendants' counterclaims for breach of implied warranty of habitability and for damages for violation of N.C.G.S. § 42-42, a part of the Residential Rental Agreements Act, since the court's denial was in contradiction of the court's findings of fact and conclusion that the premises leased to defendants were "unfit and uninhabitable as a matter of law because of cockroach infestation and the presence of safety hazards and unauthorized persons in vacant apartments," and since the court's conclusion mandated a further conclusion that plaintiff violated N.C.G.S. § 42-42 and hence breached the implied warranty of habitability; furthermore, the trial court erred in failing to determine the exact period for which the premises were not in compliance with Chapter 42.

   **Am Jur 2d, Landlord and Tenant §§ 597 et seq., 767 et seq.**

   **Modern status of rules as to existence of implied warranty of habitability or fitness for use of leased premises. 40 ALR3d 646.**

2. **Landlord and Tenant § 60 (NCI4th)— abatement of rent— failure to determine period of uninhabitability—effect of difficulty in operating complex and repair efforts**

   Where the trial court did not determine the exact period for which the premises in question were unfit and uninhabitable, the court on appeal could not determine the period for which defendants would have been entitled to abatement damages; however, plaintiff's difficulty in operating the apartment complex would not excuse a breach of N.C.G.S. § 42-42, nor would plaintiff's reasonable efforts to repair allow the trial court to deny rent abatements.

   **Am Jur 2d, Landlord and Tenant § 612.**

**Measure of damages for landlord's breach of implied warranty of habitability. 1 ALR4th 1182.**

3. **Unfair Competition or Trade Practices § 12 (NCI4th)— premises unfit for habitation—threatening notices from landlord to tenants—unfair trade practices claim improperly dismissed**

The trial court erred in dismissing defendants' counterclaims for unfair practices in violation of N.C.G.S. § 75-1.1 where plaintiff maintained an apartment building which was infested with cockroaches, contained safety hazards, and had vacant apartments with unauthorized persons using them; plaintiff had due notice of problem conditions and Code violations at the premises and did not make reasonable efforts to alleviate these conditions; after the premises were declared unfit and uninhabitable by the City Inspector, plaintiff continued to collect rent on the premises; plaintiff warned tenants that anyone calling the City of Burlington prior to making a repair request to plaintiff would be evicted; plaintiff distributed a notice which stated that, if a resident had any unauthorized person residing with them, "this will be your thirty day notice"; and plaintiff's conduct was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

**Am Jur 2d, Consumer and Borrower Protection § 291.**

**Coverage of leases under state consumer protection statutes. 89 ALR4th 854.**

4. **Landlord and Tenant § 60 (NCI4th); Equity § 3 (NCI4th)— defendants ordered to vacate premises—premises unfit for habitation—clean hands doctrine inapplicable—counterclaims moot**

The trial court did not err in ordering defendants to vacate premises and in holding that defendants' counterclaims for possession were moot, since the trial court found the premises to be unfit for human habitation; the city code provided that any building found by the inspector to be unfit for habitation could not be occupied; the application of this section was not limited to premises which had been condemned; the trial court was not granting equitable relief sought by plaintiff when it ordered the premises vacated so that the doctrine of clean hands was inapplicable; and because the trial court did not order defendants to

vacate due to nonpayment of rent, the trial court properly denied defendants' motions to dismiss and correctly concluded that defendants' counterclaims were moot.

**Am Jur 2d, Landlord and Tenant § 609.**

Appeal by defendants from order entered 2 February 1993 by Judge Spencer B. Ennis in Alamance County District Court. Heard in the Court of Appeals 22 April 1994.

*Joe A. Barringer, Pro Se, for plaintiff appellee.*

*North State Legal Services, Inc., by Terry C.J. Reilly, for defendant appellants.*

COZORT, Judge.

In this case, plaintiff initiated proceedings to evict defendants from plaintiff's apartments because defendants had not paid their rent. Defendants alleged the premises were unfit and counterclaimed for rent abatement, breach of the implied warranty of habitability, and damages under the unfair practices statutes. The trial court found the premises unfit and ordered partial abatement of rent owed by defendants. The trial court denied defendants' counterclaims for breach of the implied warranty of habitability and for unfair trade practices. We find the trial court erred in not ordering additional abatement and in denying these two counterclaims of defendants. We remand for further proceedings on these issues. The facts and procedural history follow.

Plaintiff, the owner of Creekside Apartments, initiated summary ejectment actions in small claims court against defendants on 23 September 1992 for nonpayment of rent. In the actions against defendants Poteat and Siler, the magistrate granted judgments for possession and back rent owed to plaintiff and awarded a rent abatement to defendant Siler. The magistrate dismissed the actions against defendants Currie and Dawkins. Defendants Poteat and Siler and plaintiff landlord appealed to Alamance County District Court, where the four cases were consolidated.

Defendants Poteat, Siler, Currie, and Dawkins each moved to allow amended answer and counterclaim, which motions were allowed. In their amended answer and counterclaim, defendants Dawkins and Poteat asserted as a defense plaintiff's waiver of their failure to pay rent. Each defendant further asserted as defenses,

CREEKSIDE APARTMENTS v. POTEAT

[116 N.C. App. 26 (1994)]

among other things, plaintiff's unlawful eviction attempts in violation of N.C. Gen. Stat. §§ 42-25.6 and 42-25.9 (1984) and breach of implied warranty of fitness. With respect to plaintiff's breach of implied warranty of fitness, defendants alleged that plaintiff knowingly leased the premises with serious defects which include, among other things: cockroach infestation, unreliable heat and air conditioning, unreliable appliances, leaking and stopped up plumbing, apartments are not weathertight, entire apartment building in unsafe disrepair, no lights in hallway and common areas, dumpsters not emptied regularly, mice in Dawkins' apartment, no smoke detector in Poteat's apartment, faulty smoke detector wiring in Currie's apartment, holes in ceiling of Currie's building, exposed electrical wires in Poteat's apartment, faulty wiring in apartments of Currie, Dawkins, and Siler, and no locks in the doors of Siler's apartment. Each defendant sought retrospective and prospective rent abatement, plus special or consequential damages for breach of implied warranty of fitness.

Each defendant made counterclaims for, among other things, rent abatements and compensatory damages for breach of implied warranty of habitability and treble damages for unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 (1988).

The case was heard before the Honorable Spencer B. Ennis in Alamance County District Court. On 2 February 1993 Judge Ennis entered a judgment containing, among others, these conclusions:

97. Prior to initiation of its Small Claims actions in Summary Ejectment against defendants, and prior to July, 1992, plaintiff had had difficulty operating the complex due to unreliable managerial and maintenance staff, and poor co-operation from some residents.

98. Plaintiff has since made, and continues to make reasonable efforts to alleviate this difficulty. . . .

99. Prior to that time, plaintiff did not make reasonable efforts to alleviate problem conditions and/or Code violations at the premises; in some instances, plaintiff did not have reasonable notice concerning problem conditions.

* * * *

104. Plaintiff has had due notice of problem conditions and Code violations at the premises. . . .

105. [T]hat plaintiff unreasonably delayed in making repairs to the air conditioning and the balcony rail at this [1925-C] apartment.

106. The Court finds no evidence that problems with the heating and air conditioning systems in the other defendants' apartments caused those apartments to be unreasonably cold or hot. . . .

\* \* \* \*

108. Plaintiff has had notice . . . of the infestation at . . . the Curries' apartment [and] had due notice of the roof leaks, the defective plumbing and carpet in that apartment, . . . [and] did not timely repair the roof leaks nor the carpet, although the carpet problem is a minor defect. The Court further finds that . . . the plumbing was timely repaired.

109. Plaintiff has had due notice of the plumbing and heating/air conditioning problems in . . . defendant Poteat's apartment [and] . . . plaintiff made reasonable efforts to make, and did timely make repairs to that system and to the plumbing. . . .

110. Plaintiff has had due notice of the infestation, the plumbing and air conditioning problems, and the rodents in . . . defendant Dawkins's apartment [and] . . . of the defective stairway and absent hall lighting in [defendant's] building . . . . [P]laintiff timely made repairs to the plumbing and air conditioning, and . . . repairs to the stair and the hall light were made within a reasonable time.

\* \* \* \*

112. Since at least August of 1991, there has been a serious, ongoing cockroach problem at the premises. Plaintiff cannot completely exterminate the cockroaches by fumigation or other means, while the premises are occupied by defendants. Within the last two (2) months, and particularly since December 8th, 1992, plaintiff has made reasonable efforts to alleviate the cockroach infestation, without success.

113. Since at least October of 1991, there have been vacant apartment units in the four (4) buildings in which defendants' apartments are located. Plaintiff has had written notice of this . . . . Unauthorized persons have gained entry to various apartment units, and pose continuing risks to the health and safe-

ty of the defendants. Plaintiff has been unable to prevent unauthorized persons from gaining entry to vacant apartment units in the four (4) buildings in which defendants' apartments are located.

114. Plaintiff is in the process of installing deadbolt locks at the vacant apartment units at the complex and is now taking reasonable steps to secure the vacant units. Since December 8th, 1992, plaintiff has made reasonable efforts to make these and other necessary repairs. Despite its reasonable efforts plaintiff has not alleviated the cockroach infestation, nor has plaintiff prevented unauthorized persons from gaining access to vacant apartment units in the four (4) buildings in which defendants live.

The court further concluded that each defendant failed to pay rent or to timely pay rent and thus breached the rental contract with plaintiff. The court also concluded:

125. Since at least December 8, 1992, plaintiff has failed to maintain the premises leased to defendants in compliance with the requirements of N.C.G.S. Chapter 42 or the minimum housing Code of the City of Burlington, and the health and safety of defendants cannot be assured.

126. On December 8th, 1992 and on January 26th, 1993, the premises leased to defendants were unfit and uninhabitable as a matter of law, pursuant to N.C.G.S. Chapter 42 and the minimum housing Code of the City of Burlington, due to the health and safety hazards posed, *inter alia*, by the ongoing cockroach infestation and by the presence of safety hazards and unauthorized persons in vacant apartments. For these and the foregoing reasons, defendants are entitled to particular abatements of rent, limited to a retrospective period of three (3) years.

The court denied defendants' claims of unlawful eviction attempts. The court concluded that notices delivered in January 1992 violated the provisions of N.C. Gen. Stat. § 75-50 *et seq*. The court held there was no evidence that defendants were damaged thereby and found insufficient evidence to base any award for special or consequential damages, including moving expenses, to defendants.

The court then ordered and decreed:

131. Despite reasonable efforts made in the last two (2) months, plaintiff has failed to maintain the premises in compli-

ance with law and the health and safety of defendants cannot be assured. Pursuant to the Code, § 14-103(b) and in exercise of this Court's equitable discretion to protect defendants, by reason of the uninhabitability of the premises, defendants shall vacate the premises by no later than the 1st day of March, 1993. . . . Counterclaims of waiver asserted by defendants Poteat, Dawkins, and Currie are moot.

* * * *

134. Defendants have failed to show that they have been damaged by the notices delivered by plaintiff in January, 1992, as plaintiff made no effort to collect any sums demanded in the notice and defendants demonstrate no harm suffered through their receipt of these notices. As the terms of both of these notices are violative of the provisions of G.S. §75-50 *et sequa*, defendants are awarded nominal damages . . . of $1.00 each.

135. By reason of plaintiff's reasonable efforts to make repairs in the past two (2) months, there shall be no rent abatement pertinent to the premises leased to defendants for the months of December, 1992 or January, 1993.

136. Defendants' Motions for Injunctive Relief are granted in part. By reason of the provisions of the Code, § 14-103(b), plaintiff shall not charge defendants any rent for the month of February, 1993, for the premises.

The court determined the amount of rent owed by each defendant and abated it for the months of July, 1992 through November, 1992 "in compensation for plaintiff's violations of the minimum housing Code of the City of Burlington, pursuant to N.C.G.S. § 42-42." The court denied defendants' counterclaims for attempted illegal eviction, violation of N.C. Gen. Stat. § 42-42, including breach of the implied warranty of habitability, and Unfair Trade Practices, as well as defendants' motions for moving expenses, special damages, and/or consequential damages. Defendants appeal.

Defendants assign the following errors on appeal: (1) the trial court's denial of defendants' counterclaims for breach of implied warranty of habitability and damages for violation of N.C. Gen. Stat. § 42-42, (2) the trial court's denial of defendants' counterclaims for unfair practices in violation of N.C. Gen. Stat. § 75-1.1, (3) the trial court's denial of defendant's motions to dismiss, and (4) the trial court's conclusion that defendants were entitled to only nominal

damages for plaintiff's violation of N.C. Gen. Stat. § 75-50. For the reasons discussed below, we reverse the trial court's denial of defendants' counterclaims for breach of implied warranty of habitability and for unfair practices. We also reverse the order granting partial abatement. The judgment is otherwise affirmed.

[1] We first consider whether the trial court erred in denying defendants' counterclaims for breach of implied warranty of habitability and for damages for violation of N.C. Gen. Stat. § 42-42, a part of the Residential Rental Agreements Act. Defendants argue that the trial court erred in denying its claims for breach of implied warranty of habitability and damages for violation of that statute because the trial court's denial is in contradiction of the court's findings of fact and conclusions of law. We agree.

"By the enactment in 1977 of the Residential Rental Agreements Act, N.C. Gen. Stat. Secs. 42-38 *et seq.*, our legislature implicitly adopted the rule, now followed in most jurisdictions, that a landlord impliedly warrants to the tenant that rented or leased residential premises are fit for human habitation." *Miller v. C.W. Myers Trading Post, Inc.*, 85 N.C. App. 362, 366, 355 S.E.2d 189, 192 (1987). "The implied warranty of habitability is co-extensive with the provisions of the Act." *Id.* (citation omitted). N.C. Gen. Stat. § 42-42(a) (1984), which requires landlords to provide fit premises, provides in pertinent part:

(a) The landlord shall:

(1) Comply with the current applicable building and housing codes . . . to the extent required by the operation of such codes; . . .

(2) Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition;

(3) Keep all common areas of the premises in safe condition; and

(4) Maintain in good and safe working order and promptly repair all electrical, plumbing, sanitary, heating . . . air conditioning, and other facilities and appliances supplied or required to be supplied by him provided that notification of needed repairs is made to the landlord in writing by the tenant except in emergency situations.

These statutory requirements create an implied warranty of habitability, such that a landlord "warrants to the tenant that . . . [the]

premises are fit for human habitation." *Miller v. C.W. Myers Trading Post, Inc.*, 85 N.C. App. at 366, 355 S.E.2d at 192. "Tenants may bring an action for breach of the implied warranty of habitability, seeking rent abatement, based on their landlord's noncompliance with N.C.G.S. Sec. 42-42(a)." *Cotton v. Stanley*, 86 N.C. App. 534, 537, 358 S.E.2d 692, 694 (1987). "The rent abatement is calculated as the difference between the fair rental value of the premises if as warranted (*i.e.*, in full compliance with N.C.G.S. 42-42(a)) and the fair rental value of the premises in their unfit condition ('as is') plus any special and consequential damages alleged and proved." *Id.* A tenant who has withheld rent may also recover damages for breach of the covenant of habitability, but damages of rent abatement can include only those amounts actually paid by defendant for substandard housing. *Allen v. Simmons*, 99 N.C. App. 636, 642, 394 S.E.2d 478, 482 (1990).

The trial court's denial of defendants' claims for violation of § 42-42 and for breach of implied warranty of habitability was inconsistent with its conclusion that:

On December 8th, 1992 and on January 26th, 1993, the premises leased to defendants were unfit and uninhabitable as a matter of law, pursuant to N.C.G.S. Chapter 42 and the minimum housing Code of the City of Burlington, due to the health and safety hazards posed, *inter alia*, by the ongoing cockroach infestation and by the presence of safety hazards and unauthorized persons in vacant apartments. For these and the foregoing reasons, defendants are entitled to particular abatements of rent, limited to a retrospective period of three (3) years.

The court determined the amount of rent owed by each defendant and abated it for the months of July, 1992 through November, 1992 "in compensation for plaintiff's violations of the minimum housing Code of the City of Burlington, pursuant to N.C.G.S. § 42-42." The trial court further concluded that there is insufficient evidence to base any award for special or consequential damages, including moving expenses, to defendants.

The conclusion quoted above mandates a further conclusion that plaintiff violated § 42-42(a)(1), (2), and (3) and hence breached the implied warranty of habitability. Since the court should have found that plaintiff breached the implied warranty of habitability it was error to not award abatement damages to defendants for that breach. Defendants were entitled to rent abatement for the period during which the premises were unfit. *See Cotton v. Stanley*, 86 N.C. App.

CREEKSIDE APARTMENTS v. POTEAT

[116 N.C. App. 26 (1994)]

534, 358 S.E.2d 692. With respect to the months which defendants did not pay rent, damages of rent abatement can only include the amounts they actually paid for substandard housing. *Allen v. Simmons*, 99 N.C. App. 636, 642, 394 S.E.2d 478, 482 (1990). Since the trial court abated rent for July 1992 through November, 1992 due to plaintiff's violation of § 42-42, the trial court found the premises unfit during that period. Thus, we deem the award of abatement for that period as an award for breach of the implied warranty of habitability. However, the trial court failed to determine the exact period for which the premises were not in compliance with Chapter 42. The trial court concluded that "[s]ince at least December 8, 1992 plaintiff has failed to maintain the premises leased to defendants in compliance with the requirements of N.C.G.S. Chapter 42" and that the premises were unfit and uninhabitable at least as of 8 December 1992 and 26 January 1993. We must remand to the trial court for (1) a determination of the exact period during which the defendants' apartments were unfit and (2) entry of an order for rent abatement damages covering this entire period. We note that defendants argue in their brief that they are entitled to special and consequential damages under this claim. Defendants fail to point out, however, what those damages are and what evidence supports them. That argument is thus deemed abandoned.

[2]. Defendants also assign as error the trial court's decision to deny rent abatements to defendants Dawkins and Poteat prior to July 1992 and to deny any rent abatements for December 1992 and January 1993. The trial court concluded that prior to July 1992, plaintiff had difficulty operating the complex due to unreliable managerial and maintenance staff, poor cooperation from some residents, and that plaintiff did not make reasonable efforts to alleviate problem conditions and code violations at the premises. The trial court also noted that plaintiff has discharged some members of its maintenance staff and hired a new resident manager and maintenance supervisor in July 1992. Defendants contend that the court denied rent abatements prior to July 1992 solely because plaintiff retained new staff at that time. Since the trial court did not determine the exact period for which the premises were unfit and uninhabitable, we cannot determine whether the defendants would have been entitled to abatement damages for the period preceding July 1992. Thus, we are unable to determine whether the trial court erred by failing to award abatement damages prior to July 1992. However, we do note that plaintiff's difficulty in operating the complex does not excuse a breach of § 42-42. Thus, on

remand, if the trial court finds the premises unfit and uninhabitable prior to July 1992, it may not deny rent abatement because of plaintiff's difficulty in operating the complex.

Defendants further contend that given the trial court's conclusion that the premises were unfit and uninhabitable during December 1992 and January 1993, it was error for the court to conclude that plaintiff's repair efforts during December 1992 and January 1993 were reasonable and to deny rent abatements for those months because of plaintiff's reasonable efforts to make repairs. We agree. The trial court concluded that despite reasonable efforts in the last two months plaintiff failed to maintain the premises leased in compliance with the requirements of Chapter 42 or the City Code. Since the trial court in essence concluded that plaintiff violated § 42-42, the trial court could not deny rent abatements for December and January because of plaintiff's reasonable efforts to repair during those months.

[3] We next consider whether the trial court erred in denying defendants' counterclaims for unfair practices in violation of N.C. Gen. Stat. § 75-1.1. Defendants argue that plaintiff's failure to maintain the dwellings in a safe, fit, and habitable condition and subsequent demands for payment of rent constitute an unfair and deceptive trade practice. We agree, and we reverse the trial court's denial of defendants' counterclaims.

Chapter 75 was created to "provide means of maintaining 'ethical standards of dealings . . . between persons engaged in business and the consuming public' and to promote 'good faith and fair dealings between buyers and sellers. . . .' " *Allen v. Simmons*, 99 N.C. App. 636, 643, 394 S.E.2d 478, 483 (1990). In order to prevail under Chapter 75, a litigant must prove that the other party committed an unfair or deceptive act or practice, that the action in question was in or affecting commerce, and that said act proximately caused actual injury to the litigant. *Canady v. Mann*, 107 N.C. App. 252, 260, 419 S.E.2d 597, 602 (1992). Conduct is unfair or deceptive if it has the capacity or tendency to deceive the average consumer. *Id.* Proof of actual deception is not required. *Spartan Leasing v. Pollard*, 101 N.C. App. 450, 461, 400 S.E.2d 476, 482 (1991). A trade practice is unfair within the meaning of § 75-1.1 "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Johnson v. Phoenix Mutual Life Insurance Co.*, 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980) (citation omitted). "While an act or practice which is unfair may also

be deceptive, or vice versa, it need not be so for there to be a violation of the Act." *Id.* Chapter 75 applies to residential rentals because the rental of residential housing is commerce pursuant to § 75-1.1. *Love v. Pressley,* 34 N.C. App. 503, 516, 239 S.E.2d 574, 583 (1977).

The facts in the instant case are similar to the facts in *Allen v. Simmons.* In *Allen v. Simmons,* 99 N.C. App. 636, 394 S.E.2d 478 (1990), this Court held that a jury could find that plaintiff committed an unfair trade practice where defendant's evidence was that plaintiff leased to defendant a house which contained numerous defects which existed throughout defendant's tenancy and rendered the house unfit and uninhabitable. Plaintiff failed to respond to numerous notices about the unfit and uninhabitable state of the house. Despite the unfit conditions of the house, plaintiff attempted to collect rent after defendant discontinued payments. We held that plaintiff's behavior can be considered "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Allen,* 99 N.C. App. at 645, 394 S.E.2d at 484.

In the instant case, the trial court concluded that plaintiff had due notice of problem conditions and Code violations at the premises and did not make reasonable efforts to alleviate these conditions and violations until July 1992. Since at least August 1991, there was a serious, ongoing cockroach problem. While plaintiff was aware of this problem, he did not make reasonable efforts to alleviate the infestation until the last two months preceding the trial. The trial court concluded that at least since October 1991 there have been vacant apartment units which pose continuing risks to the health and safety of defendants. Although plaintiff had written notice of this problem, plaintiff did not make reasonable efforts to solve this problem until 8 December 1992, when the premises were declared unfit and uninhabitable. The trial court concluded that the premises were unfit and uninhabitable on 8 December 1992 and 26 January 1993 "due to the health and safety hazards posed, *inter alia,* by the ongoing cockroach infestation and by the presence of safety hazards and unauthorized persons in vacant apartments." The trial court further stated that "plaintiff has failed to maintain the premises in compliance with the law and the health and safety of defendants cannot be assured." The court ordered defendants to vacate because of the uninhabitability of the premises. After the premises were declared unfit and uninhabitable by the City Inspector, plaintiff continued to collect rent on the premises. The trial court also found that on or about 3 January 1992 plaintiff delivered a written statement to all residents, which all four

defendants received, entitled "Notice to All Tenents [*sic*]," which warned tenants that if a tenant called the City of Burlington prior to making a repair request to plaintiff, the tenant would be evicted. On 3 January 1992 plaintiff also distributed a notice received by defendants Currie and Dawkins, which stated that if a resident had any unauthorized person residing with them, "this will be your thirty day notice." The trial court concluded that the terms of these notices violated the provisions of N.C. Gen. Stat. §§ 75-50, *et seq.*

We find plaintiff's conduct, like that in *Allen v. Simmons,* "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and thus hold that the trial court's dismissal of defendant's unfair practices counterclaim was in error. On remand, the trial court must enter judgment for defendants on this counterclaim, in accordance with Chapter 75.

[4] Defendants Poteat, Currie, and Dawkins made motions to dismiss all claims seeking possession on grounds that plaintiff waived that remedy by the following: accepting rent from Poteat and Dawkins prior to judgment, execution of a new HUD lease with Currie prior to judgment, and accepting rent and a late fee from Currie. These defendants also counterclaimed that plaintiff waived the right to possession. The trial court denied these motions and held that "[p]ursuant to the Code, § 14-103(b) and in exercise of this Court's equitable discretion to protect defendants, by reason of the uninhabitability of the premises, defendants shall vacate the premises by no later than the 1st day of March, 1993." The trial court further held that defendants' counterclaims were moot. Defendants assign as error the trial court's denial of these motions to dismiss, the trial court's order to vacate, and the court's conclusion that defendants' counterclaims of waiver were moot.

Defendants argue that the trial court's order to vacate was in error because (1) the minimum housing Code of the City of Burlington, § 14-103 applies to premises which have been condemned and these premises had not been condemned; and (2) it was inequitable to allow plaintiff to evict defendants when plaintiff had unclean hands. We find the trial court correctly applied § 14-103 and that the doctrine of unclean hands does not apply here. We thus affirm the trial court's order to vacate.

Section 14-103(b) of the Code of the City of Burlington states: "[W]hen the inspector finds that a building is unfit for human habitation within the meaning of this chapter and has notified the owner to

such effect and the time limit set by the inspector for the correction of defects and vacating same has expired, no person shall receive rentals, offer for rent or occupy such building for any purpose." Thus, contrary to defendants' assertion, the application of this section is not limited to premises which have been condemned. Since the trial court's findings of fact establish that the inspector declared defendants' buildings unfit and that plaintiff failed to correct the defects within the time set, we find that the trial court correctly applied § 14-103(b).

The trial court did not order the premises vacated because of defendants' nonpayment of rent. Rather, the court found (1) the premises were uninhabitable, (2) the City Code provided that the premises could not be rented, and (3) it is necessary to protect defendants from the unsafe, uninhabitable environment. Since the trial court was not granting equitable relief sought by plaintiff when it ordered the premises vacated, the doctrine of clean hands is inapplicable here. Moreover, since the trial court did not order defendants to vacate due to nonpayment of rent, we find the trial court properly denied defendants' motions to dismiss and correctly concluded that defendants' counterclaims for waiver were moot.

Defendants also contend that the following conclusions of the trial court are unsupported by the findings of fact and the evidence in the record: (1) the trial court's conclusion denying special damages and denying defendant's motion for consequential damages; (2) that there is insufficient evidence to find that the heating/air conditioning units in the apartments rented by defendants Poteat, Currie and Dawkins caused the apartments to be unreasonably cold or hot; (3) that the plumbing in defendants Poteat's and Currie's units were timely repaired; (4) that, with respect to defendant Dawkins' apartment, plaintiff timely made repairs to the plumbing and air conditioning and made repairs to the stair and the hall light within a reasonable time; and (5) that in December 1992 and January 1993 plaintiff made reasonable efforts to cure the cockroach infestation or make other necessary repairs in defendants' apartments. We disagree.

Findings of fact made by a trial court sitting as finder of fact are conclusive on appeal if there is evidence to support them, although evidence might have supported findings. to the contrary. *Henderson County v. Osteen*, 297 N.C. 113, 120, 254 S.E.2d 160, 165 (1979). We have reviewed the findings of fact and evidence in the record and find support for the challenged conclusions of the trial court.

We have reviewed the remaining arguments presented by defendants and find no error.

In sum, we reverse the trial court's denial of defendants' counterclaims for breach of implied warranty of habitability and for unfair and deceptive trade practices. We remand the case to the trial court for (1) a determination of the entire period the premises were unfit; (2) entry of an award of abatement damages for this period; and (3) entry of judgment for defendants on their counterclaim for unfair trade practices. The remainder of the trial court's order is affirmed.

Affirmed in part, reversed in part, and remanded.

Judges ORR and MARTIN concur.