DAVIS, Judge.
Maresa Cronje appeals from a judgment denying her claim for summary ejectment of Linda Gail Johnston and granting Johnston's counterclaims for breach of the implied warranty of habitability and unfair and deceptive trade practices. After a thorough review of the record and applicable law, we affirm the trial court's order.
Factual and Procedural Background
On 3 October 2017, Johnston moved into a residence located on 2848 Little Creek Lane in Lenoir, North Carolina. She leased the property from Cronje for $650 per month pursuant to a one-page, handwritten lease. Upon moving in, Johnston noticed there was no operable source of heat. She also observed defective wiring that produced electricity in only part of the home and caused appliances to short out when plugged into the outlets. When Johnston notified Cronje of the defective wiring and lack of a viable heating source, Cronje refused to make repairs and instructed Johnston to buy a space heater.
In January 2018, the pump for the property's well stopped working. Without access to running water, Johnston was forced to carry water from the creek behind the property to her home. Although Johnston informed Cronje that the property's well was no longer working, Cronje made no effort to rectify the situation. Despite these defects, Johnston remained on the property and continued to pay her rent.
On 21 January 2018, Cronje gave permission for another individual to live in Johnston's home despite the fact that Johnston had never met the other person and had not given her consent. Johnston called the police that same day. Upon arrival, law enforcement officers instructed Cronje that no additional persons could live in the home without Johnston's approval.
On 23 January 2018, Cronje asked Johnston when she would be vacating the premises. She told Johnston that if she was not "out by Monday, [Cronje] was going to have [Johnston] put in an institution." Following this conversation, Johnston once again called the police. Law enforcement officers informed Cronje that she was not legally permitted to evict a tenant without first "taking out eviction papers."
That same day, Cronje gave Johnston a document entitled "Notice to Evacuate," stating that because of Johnston's "mental health and other issues" Cronje had the right to void the lease agreement. The document stated, in pertinent part, as follows:
In terms of the contract this rental agreement or lack thereof is terminated and you have to leave the premises asap before February 3, 2018. Failure to do so, will result in my getting the police to evict you and/or getting you admitted to a mental institution asap.
Your unstable behavior, mental health and physical health necessitates your leaving immediately.
On 5 February 2018, Cronje filed a summary ejectment action in Caldwell County Small Claims Court against Johnston. In her complaint, Cronje alleged that Johnston had breached the lease by "[having] a mental problem," failing to pay her rent or electric bill, not opening the door to Cronje, and only speaking to Cronje with police officers present. Johnston filed an answer on 16 February 2018 requesting that the court dismiss Cronje's complaint and asserting counterclaims for (1) retaliatory eviction; (2) breach of the implied warranty of habitability; and (3) unfair and deceptive trade practices.
On 16 February 2018, the magistrate entered an order dismissing Cronje's summary ejectment action and awarding Johnston $900 in damages. Cronje subsequently appealed the magistrate's judgment to Caldwell County District Court for a trial de novo . Johnston filed an amended answer on 2 March 2018, adding a counterclaim for violation of the Fair Housing Act.
A bench trial was held before the Honorable Mark L. Killian on 20 March 2018. The trial court entered a judgment on 16 April 2018 (1) denying Cronje's claim for summary ejectment; (2) denying Johnston's counterclaim for violation of the Fair Housing Act; (3) and awarding Johnston $4,050 in damages on her counterclaims for breach of the implied warranty of habitability and unfair and deceptive trade practices. Cronje gave notice of appeal to this Court.
Analysis
I. Breach of Implied Warranty of Habitability
Cronje first asserts that Johnston's counterclaim for breach of the implied warranty of habitability was invalid because Johnston was aware that the property did not have a functioning heat source at the time that she moved in. N.C. Gen. Stat. § 42-42 provides, in pertinent part, as follows:
(a) The landlord shall:
....
(2) Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition.
....
(8) Within a reasonable period of time based upon the severity of the condition, repair or remedy any imminently dangerous condition on the premises after acquiring actual knowledge or receiving notice of the condition. ... For purposes of this subdivision, the term "imminently dangerous condition" means any of the following:
a. Unsafe wiring.
....
e. Lack of potable water.
....
h. Lack of operable heating facilities capable of heating living areas to 65 degrees Fahrenheit when it is 20 degrees Fahrenheit outside from November 1 through March 31.
....
(b) The landlord is not released of his obligations under any part of this section by the tenant's explicit or implicit acceptance of the landlord's failure to provide premises complying with this section, whether done before the lease was made, when it was made, or after it was made[.]
N.C. Gen. Stat. § 42-42 (2017).
In Surratt v. Newton , 99 N.C. App. 396, 393 S.E.2d 554 (1990), the plaintiff brought an action for rent abatement connected with the rental of an unfit and uninhabitable property from the defendant. Id. at 399, 393 S.E.2d at 556. The property possessed a number of serious defects, including problems related to the electricity and plumbing. Id. at 400, 393 S.E.2d at 556. During her occupancy of the property, the plaintiff verbally informed the defendant that the house needed to be "fixed up, inspected and all." Id. at 406, 393 S.E.2d at 559. The trial court awarded damages to the plaintiff. Id. at 401, 393 S.E.2d at 556.
On appeal, the defendant argued that the plaintiff's verbal notification did not amount to sufficient notice of the defects in the home and, therefore, the plaintiff was not entitled to recover damages. Id. at 405, 393 S.E.2d at 559. In affirming the trial court's order, we held that "where the conditions enumerated in G.S. 42-42(a)(4) are the same conditions which render the premises unfit and uninhabitable no written notice is required under the statute." Id. at 405-06, 292 S.E.2d at 559.
In the present case, evidence was presented at trial that Johnston initially notified Cronje of the defective wiring and lack of heat upon moving into the premises in October 2017. Cronje made no attempt to remedy either defect and instructed Johnston to purchase a space heater, which was to serve as the only source of heat for the home during the winter. In addition, when the well pump that served as her only water source stopped functioning, Johnston immediately notified Cronje. Despite learning of this situation, Cronje once again did nothing to remedy the condition.
Thus, Johnston's oral notifications to Cronje of the defects in the home were sufficient to put Cronje on notice that the home was unfit and uninhabitable. Despite repeated notifications from Johnston, Cronje made no effort to remedy these defects. Moreover, Cronje's argument that Johnston implicitly accepted these conditions is unavailing given that N.C. Gen. Stat. § 42-42 expressly states that a landlord is not released from its obligation to provide fit and habitable premises by a tenant's acceptance of uninhabitable living conditions. See N.C. Gen. Stat. § 42-42(b) (2017). Therefore, we hold that the trial court did not err in entering judgment in favor of Johnston on her counterclaim for breach of the implied warranty of habitability. See Miller v. C.W. Myers Trading Post, Inc. , 85 N.C. App. 362, 366, 355 S.E.2d 189, 192 (1987) ("The implied warranty of habitability is coextensive with the provisions of [ N.C. Gen. Stat. § 42-42 ]." (citation omitted) ).
II. Unfair and Deceptive Trade Practices
Cronje next argues that the trial court erred by ruling in Johnston's favor on her counterclaim for unfair and deceptive trade practices. Once again, we disagree.
N.C. Gen. Stat. § 75-1.1 provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a) (2017). This Court has stated that "[t]he purpose of G.S. Chapter 75 is to provide means of maintaining ethical standards of dealings between persons engaged in business and the consuming public and to promote good faith and fair dealings between buyers and sellers." Allen v. Simmons , 99 N.C. App. 636, 643, 394 S.E.2d 478, 483 (1990) (citation, quotation marks, and ellipsis omitted).
We have held that in order to establish a violation of Chapter 75, a litigant must prove "the other party committed an unfair or deceptive act or practice, that the action in question was in or affecting commerce, and that said act proximately caused actual injury to the litigant." Creekside Apartments v. Poteat , 116 N.C. App. 26, 36, 446 S.E.2d 826, 833 (citation omitted), disc. review denied , 338 N.C. 308, 451 S.E.2d 632 (1994). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Mosley & Mosley Builders, Inc. v. Landin Ltd. , 97 N.C. App. 511, 517, 389 S.E.2d 576, 579 (citation omitted), disc. review denied , 326 N.C. 801, 393 S.E.2d 898 (1990). Furthermore, "good faith is not a defense to an alleged violation of G.S. 75-1.1." Id.
In Allen , the tenant argued that her landlord had engaged in an unfair trade practice by virtue of his awareness of "deplorable" defects in the home, including "electrical problems" and "no furnace" yet had failed to make the necessary repairs. Allen , 99 N.C. App. at 638, 643, 394 S.E.2d at 480, 483 (citation and quotation marks omitted). This Court determined that the landlord's behavior could "be considered immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" because he was notified of the defects on multiple occasions and failed to remedy them. Id. at 645, 394 S.E.2d at 484. Consequently, we held that "a jury could find that [the landlord] committed an unfair trade practice and the trial court erred in not submitting this issue to the jury." Id.
Similarly, in Creekside Apartments the landlord was notified of various "problem conditions and Code violations at the premises" he rented to his tenant. Creekside Apartments , 116 N.C. App. at 37, 446 S.E.2d at 833. Although the landlord had notice of the defects associated with the property rendering it uninhabitable, nearly a year passed before he made any effort to alleviate the conditions. Id. Based on our determination that sufficient evidence was submitted of "immoral" and "unethical" actions on the part of the landlord, we held that "the trial court's dismissal of defendant's unfair practices counterclaim was in error." Id. at 38, 446 S.E.2d at 834.
In the present case, evidence was presented at trial that the residence Johnston rented from Cronje was riddled with defects that rendered the premises unfit and uninhabitable. Johnston repeatedly notified Cronje of these defects throughout the time period that she occupied the premises. Although Cronje was notified of these defects, she never made any attempt to remedy the uninhabitable conditions. Therefore, we affirm the trial court's ruling that Johnston presented sufficient evidence to support her counterclaim for unfair and deceptive trade practices. See Foy v. Spinks , 105 N.C. App. 534, 540, 414 S.E.2d 87, 89-90 (1992) (where "rental premises were unfit for human habitation and the landlord was aware of needed repairs but failed to honor his promises to correct the deficiencies ... such evidence would support a factual finding by the jury that the landlord committed an unfair or deceptive trade practice" (citation omitted) ).
III. Summary Ejectment
Finally, Cronje contends the trial court erred by denying her motion for summary ejectment. She makes various arguments to support this assertion, stemming primarily from her belief that she acted appropriately in attempting to evict Johnston due to Johnston's alleged mental health issues. In her brief, Cronje asserts that the trial court "founded its judgment on wrong grounds and false evidence" because "[Johnston] is a sick mentally disturbed individual who speaks only lies."
Based on our careful review of the record, we agree with the trial court's determination that Cronje "failed to properly terminate the parties' lease agreement according to law." Therefore, we hold that the trial court did not err in denying Cronje's action for summary ejectment.
Conclusion
For the reasons stated above, we affirm the trial court's 16 April 2018 judgment.
AFFIRMED.
Report per Rule 30(e).
Judges BRYANT and INMAN concur.